**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**Kaye Michelle WIGGINS,
Defendant-Appellant.**

**No. 85–3471.**

United States Court of Appeals,
Eleventh Circuit.

May 9, 1986.

Paul Shimek, Jr., Pensacola, Fla., Charles E. Rice, Notre Dame Law School, Notre Dame, Ind., for defendant-appellant.

W. Thomas Dillard, U.S. Atty., Susan M. Novotny, Asst. U.S. Atty., Pensacola, Fla., for plaintiff-appellee.

Before GODBOLD, Chief Judge, TJOFLAT, Circuit Judge, and TUTTLE, Senior Circuit Judge.

PER CURIAM:

Appellant was convicted of conspiracy to make firearms and to damage and destroy by fire or explosive buildings used in activities affecting interstate commerce, in violation of 26 U.S.C. § 5861(f) and 18 U.S.C. § 844(i). Count I of the indictment, under which appellant was convicted, charged that she and another young woman assisted and supported two young men, one of them her fiance Goldsby, in constructing explosive devices that the two men placed at the target buildings.[1] The buildings, located in Pensacola, Florida, were doctors' offices and a clinic that the defendants described as an abortion clinic. The explosives were set off in the early morning hours, and one of the buildings was destroyed, the other two damaged.

---

1. The men were convicted but did not appeal.

 There is no merit to the claim that appellant was entitled to a mistrial because of statements made in closing arguments by the U.S. Attorney. No objection was made to any of the statements at the time. The only review is for plain error. *U.S. v. Smith,* 700 F.2d 627 (11th Cir.1983). In large part, if not entirely, the arguments were appropriate in view of the main thrust of the defense, which was that defendants were guilty of no criminal offense in blowing up buildings because they felt that their religious faith justified their acts. There was no plain error.

 The contention that there was insufficient evidence to submit the case to the jury is frivolous. Appellant purchased four pounds of black powder from two stores and told conflicting stories about the proposed use of the powder. She was present in Goldsby's house when the bombs were constructed in the kitchen but stayed away from that room. The male co-defendants referred to the explosion plans as the "Gideon Project." Appellant wrote Goldsby stating that she was praying for the success of the Gideon Project and urging him to do the same. At trial she testified that she thought the Gideon Project was a proposed raft trip and that prayer was directed at the co-defendants' not suffering insect bites or other risks on the trip, an explanation the jury was free to disbelieve. When she learned that FBI agents were to interrogate Goldsby, she set out for his house to remove the black powder cans but was stopped by government agents before she reached there. She accompanied Goldsby when he bought dark clothing that was worn on the night of the bombing. And there was testimony that she wanted to go along with the two men to set the bombs but was told that it was too dangerous.

 Count I of the indictment referred to overt acts previous to the time established at trial as the beginning of the conspiracy. These earlier acts referred to another bombing attempt. Since these earlier acts were not proved at trial, the court decided that the best way to handle this was to send the indictment into the jury room with no deletions and to make no special note of the alleged preconspiracy overt acts. Presumably the court's reasoning was that it was better not to emphasize these unproved allegations. Lead counsel for the defendants concurred with the court's suggestion, and counsel for the appellant made no comment. About 30 minutes later the jury sent the judge a note, indicating that the indictment referred to the June 1984 acts and that it believed this subject matter was outside of the scope of its deliberations. Defense counsel made the suggestion that the court tell the jury what parts of the indictment to ignore, and the prosecution concurred in this recommendation. After further colloquy the court again stated its intention to tell the jury to disregard anything in the indictment relating to the June 1984 incident, and both the prosecutor and counsel for the appellant responded affirmatively to this suggestion. The judge read to counsel the precise wording that he intended to direct to the jury, and counsel for the appellant said "Sounds good." The suggestion that the judge's handling of this matter was error is frivolous.

AFFIRMED.