MARCUS, Circuit Judge, dissenting, in which TJOFLAT and BIRCH, Circuit Judges,
join:
I join in Judge Tjoflat’s opinion and write separately to add a few thoughts of my own. As I see it, the use of the video testimony procedure employed in this case fully comported with the text, historical purpose, and modern understanding of the Confrontation Clause. The majority has essentially revised the Sixth Amendment on its own by erroneously employing a test that does not apply. Accordingly, I respectfully dissent.
The majority rests its opinion on Maryland v. Craig, 497 U.S. 836,110 S.Ct. 3157, 111 L.Ed.2d 666 (1990), a case that for at least three basic reasons is wholly inapplicable to the facts of this one. The first and most important distinction is that Craig involved witnesses who could have been ordered to testify in court in the usual fashion, but for compelling public policy reasons were permitted to testify out of the defendant’s presence. In this case, by contrast, the witnesses (then in Australia) genuinely were unavailable to appear in court to give their testimony and could not be either persuaded or compelled to appear. Second, Craig was tailored to a very particular predicament: that of an abused child who, if forced to take the witness stand to confront her abuser, would suffer emotional trauma that would compound the harm she had already suffered and also impair her ability to give reliable testimony. Finally, the contemporaneous, real-time, two-way video procedure used in this case was wholly different in nature from the one-way video procedure employed in Craig. A two-way vi-deoconference used contemporaneously during trial, unlike a one-way videoconference, allows the witness to see the jury and the defendant, thus achieving the Confrontation Clause’s important goal of bringing the accuser face to face with the accused and the factfinder, albeit through the medium of a television screen.
Moreover, even if Craig could be adapted to govern the facts of this case, a proper analysis under Craig would still not follow the path the majority has followed. In finding that the possibility of a Rule 15 deposition somehow made remote testimony improper under Craig, the majority has misapprehended both Rule 15 and the Confrontation Clause. Indeed, it has inexplicably accorded Rule 15 quasi-constitutional status as the exclusive means of obtaining overseas testimony. The Craig test, properly applied, would find that the two-way video procedure used here satisfied the Confrontation Clause in light of the necessity of obtaining the overseas witnesses’ testimony and the extensive measures the district court took to pre *1328 serve the essential elements of effective confrontation. All in all, the procedure the district court followed in this case fully-complied with the demands of the Confrontation Clause. Yates and Pusztai had every opportunity to cross-examine the witnesses against them, and those witnesses testified under oath[1] and under the gaze of the defendants, the judge, and the jury-
I agree with the majority that the only question properly before us today is whether the use of a contemporaneous, two-way video procedure violated the defendants’ rights under the Sixth Amendment Confrontation Clause. I also agree that we have no occasion to visit other questions such as whether the procedure complied with Rule 26 of the Federal Rules of Criminal Procedure.
I.
The majority holds that the two-way video testimony procedure in this case violated the Confrontation Clause because it failed the test postulated in Maryland v. Craig, where the Supreme Court held that a trial court may dispense with face-to-face in-court confrontation when it finds that doing so is necessary to advance an important government interest and the reliability of the testimony is assured through other means. Id. at 850, 110 S.Ct. at 3166. This case falls outside the narrow scope of Craig.
First, any discussion of Maryland v. Craig must begin with the unique facts of the case. The defendant, the owner and operator of a kindergarten and prekindergarten center, was charged with sexually abusing a six-year-old girl who had been in her care. The prosecution asked the trial court to invoke a state criminal procedure statute that authorized one-way video testimony by alleged victims of child abuse when “testimony by the child victim in the courtroom will result in the child suffering serious emotional distress such that the child cannot reasonably communicate.” Craig, 497 U.S. at 841, 110 S.Ct. at 3161 (quoting Md. Cts. & Jud. Proc.Code. Ann. § 9-102(a)(l)(ii) (1989)). The court determined that testifying live would distress Craig’s alleged victims in exactly that way, and it allowed the named victim and three more victims to testify against Craig through the one-way video procedure. Craig was convicted, and she sought a new trial, arguing that the federal Confrontation Clause guaranteed her a face-to-face courtroom encounter with her accusers.
The Supreme Court rejected Craig’s argument, ruling that “[although face-to-face confrontation forms ‘the core of the values furthered by the Confrontation Clause,’ ... it is not the sine qua non of the confrontation right.” Id. at 847, 110 S.Ct. at 3164 (quoting California v. Green, 399 U.S. 149, 157, 90 S.Ct. 1930, 1934-35, 26 L.Ed.2d 489 (1970)). The Court held that “if the State makes an adequate showing of necessity, the state interest in protecting child witnesses from the trauma of testifying in a child abuse case is sufficiently important to justify the use of a special procedure that permits a child witness in such cases to testify at trial against a defendant in the absence of face-to-face confrontation with the defendant.” Id. at 855, 110 S.Ct. at 3169.
Craig is inapplicable to this case. The most important distinction is that the child witnesses in Craig were not unavailable; the court could have compelled them to testify in open court in the usual manner. Craig does not apply in a situation where *1329 the witnesses simply cannot be produced for an in-person appearance in court, as was the case with the two Australian witnesses in this case. Indeed, the Craig decision itself directly relied on a number of earlier precedents that permitted admission of statements by unavailable witnesses without requiring either face-to-face confrontation or any application of the test established in Craig. Id. at 847-50, 110 S.Ct. at 3164-66. For example, in Mattox v. United States, 156 U.S. 237, 15 S.Ct. 337, 39 L.Ed. 409 (1895), the Court permitted the introduction of testimony two deceased witnesses had given at a prior trial. See id. at 244, 15 S.Ct. at 340. In Ohio v. Roberts, 448 U.S. 56, 100 S.Ct. 2531, 65 L.Ed.2d 597 (1980), overruled in part on other grounds by Crawford v. Washington, 541 U.S. 36, 124 S.Ct. 1354, 158 L.Ed.2d 177 (2004), the Court approved the admission of testimony an unavailable witness had given at a preliminary hearing. See id. at 73, 100 S.Ct. at 2542-43. In Bourjaily v. United States, 483 U.S. 171, 107 S.Ct. 2775, 97 L.Ed.2d 144 (1987), the Court permitted introduction of out-of-court statements of a co-conspirator who refused to testify at the defendant’s trial, concluding that admissibility of such testimony was “firmly enough rooted in our jurisprudence” to permit admission despite the defendant’s confrontation right. Id. at 183-84, 107 S.Ct. at 2782-83.
The Court took these and other cases to mean that “the word ‘confronted,’ as used in the Confrontation Clause, cannot simply mean face-to-face confrontation, for the Clause would then, contrary to our cases, prohibit the admission of any accusatory hearsay statement made by an absent de-clarant.” Craig, 497 U.S. at 849, 110 S.Ct. at 3165. The Confrontation Clause must be interpreted in a manner “sensitive to its purposes and sensitive to the necessities of trial and the adversary process.” Id.
The Supreme Court most recently expounded on the meaning of the Confrontation Clause in Crawford v. Washington, 541 U.S. 36, 124 S.Ct. 1354, 158 L.Ed.2d 177 (2004). The defendant, Michael Crawford, was accused of assault and attempted murder. Crawford claimed he had acted in self-defense, but a statement his wife Sylvia had made to police appeared to contradict Crawford’s story. The state marital privilege prevented the prosecution from compelling Sylvia Crawford to testify in court without her husband’s consent, but the cburt permitted the prosecution to introduce a recording of Sylvia Crawford’s police interrogation. Crawford was convicted, but the Supreme Court reversed, finding that the introduction of Sylvia Crawford’s statement violated the Sixth Amendment Confrontation Clause. After a lengthy discussion of the historical roots of the confrontation requirement as a device for preventing trial by ex parte examination, the Court held that prior testimonial statements against a criminal defendant can be admitted only if the witness is unavailable to appear in court .and the defendant had a prior opportunity to cross-examine the witness. Id. at 68, 124 S.Ct. at 1374.
Crawford reinforced the longstanding principle that the Confrontation Clause in effect imposes two parallel sets of ground rules, one governing testimony by witnesses who are available to appear in court and one governing testimony by witnesses who are unavailable.[2] When a witness can *1330 be produced in court, she must testify in person in court, in the presence of the defendant and the factfinder, unless a sufficiently compelling public policy interest justifies dispensing with the face-to-face confrontation requirement under the Craig test. When a witness cannot be brought to court, however, the Confrontation Clause is satisfied as long as the defendant has an adequate opportunity to cross-examine the witness. Cross-examination independently satisfies the confrontation requirement; the testimony of unavailable witnesses can be introduced against a defendant without any application of the Craig test. See Crawford, 541 U.S. at 53-54, 68, 124 S.Ct. at 1365-66, 1374 (noting that unavailability and cross-examination are the key factors, without any mention of Craig).[3]
In Crawford the Supreme Court emphasized that the proper interpretation and application of the Confrontation Clause is impossible without consideration of the purposes it was intended to serve and how the confrontation requirement has historically worked in practice. See Crawford, 541 U.S. at 42-43, 124 S.Ct. at 1359 (“The Constitution’s text does not alone resolve this case .... We must ... turn to the historical background of the Clause to understand its meaning.”). The testimony of unavailable witnesses falls within a traditional exception to the usual requirement of in-person confrontation. See id. at 54, 124 S.Ct. at 1365-66 (stating that the confrontation requirement is subject only to “those exceptions established at the time of the founding,” but that chief among those exceptions is the exception for persons “unavailable to testify”); see also Mattox, 156 U.S. at 243, 15 S.Ct. at 340 (“Many of [the Constitution’s] provisions in the nature of a Bill of Rights are subject to exceptions, recognized long before the adoption of the Constitution, and not interfering at all with its spirit. Such exceptions were obviously intended to be respected.”).
Why the Confrontation Clause applies a special rule to unavailable witnesses may be puzzling on the surface, but the rationale becomes clear once we follow the Supreme Court’s exhortation to examine the historical roots of the Clause. Common law adversarial procedure demands that courts perform the ritual of face-to-face confrontation not just for the sake of spectacle, but because it provides a convenient precautionary measure for ensuring that the defendant has a full opportunity to challenge a witness’s statements. See Crawford, 541 U.S. at 61, 124 S.Ct. at 1370 (“[T]he Clause’s ultimate goal is to ensure reliability of evidence .... [I]t is a procedural rather than a substantive guarantee. It commands ... that reliability be assessed in a particular manner: by testing *1331 in the crucible of cross-examination”). When it is possible to produce a witness for trial, the requirement of physical presence works adequately, if imperfectly, as a means of insulating the adversarial process from contamination by inquisitorial practices. If it were applied in situations where the witness cannot be produced at trial, however, this rigid procedural device would perform far more poorly. Because the in-person confrontation rule assumes that the witness is available, rigid application of the rule would result in exclusion of all statements of unavailable witnesses, which would lead courts to discard too much rehable evidence. Long ago, the Court held in Mattox, for example, that prior sworn testimony by deceased witnesses should be held admissible even though the witnesses would not appear at trial. The Court wrote:
[Gjeneral rules of law of this kind, however beneficent in their operation and valuable to the accused, must occasionally give way to considerations of public policy and the necessities of the case .... The law in its wisdom declares that the rights of the public shall not be wholly sacrificed in order that an incidental benefit may be preserved to the accused.
Mattox, 156 U.S. at 243, 15 S.Ct. at 340.
The sole purpose of the Craig test is to determine when a court can relax the rigid requirement of face-to-face confrontation. But when a witness is truly unavailable, the requirement of face-to-face confrontation does not apply in the first place, so the Craig test ought not to apply either.
In the second place, as Judge Tjoflat suggests, Craig was tailored as a narrow solution to an exceptional problem. I suspect that the Supreme Court never intended lower courts to apply Craig outside the peculiar and poignant facts of that case: the case of a terrorized child for whom a forced encounter with her abuser in open court would compound the trauma she had suffered from the very events she was to relate. The Craig opinion is replete with references to the unique context of the case. The Court’s final summary of its holding spoke in the narrowest of terms:
In sum, we conclude that where necessary to protect a child witness from trauma that would be caused by testifying in the physical presence of the defendant, at least where such trauma would impair the child’s ability to communicate, the Confrontation Clause does not prohibit use of a procedure that, despite the absence of face-to-face confrontation, ensures the reliability of the evidence by subjecting it to rigorous adversarial testing and thereby preserves the essence of effective confrontation.
Craig, 497 U.S. at 857, 110 S.Ct. at 3170.
It is clear that Craig’s relevance ebbs as the circumstances of a case — the technique at issue, the identity of the witness, and the nature of the testimony — move farther away from the situation at Craig’s heart— one-way video testimony by an abused child against her alleged abuser. The witnesses in this case were not children or other especially vulnerable persons; nor was the prosecution seeking to avoid producing the witnesses in the courtroom because of the possibility that the witnesses might be impaired by emotional distress, the danger of intimidation, or any other factor that even remotely mirrors the Craig situation.
The third powerful difference from Craig is that the use of a live, contemporaneous, two-way video transmission in this case is fundamentally different from the one-way video transmission in Craig. In Craig, the judge, jury, and defendant remained in the courtroom and watched each child witness on a video screen as he or she testified from a remote location. The child, on the other hand, had no view of *1332 the persons in the courtroom — indeed, the very purpose of the video setup was to prevent the child from seeing the defendant while he or she testified.
The video link in this case decidedly had the opposite purpose: to allow a confrontation between the defendants and their accusers, not to prevent one. The witnesses had a full view of the defendants and the jury as they testified.[4] That visual connection was enough to achieve “the strong symbolic purpose served by requiring adverse witnesses at trial to testify in the accused’s presence.” Craig, 497 U.S. at 847, 110 S.Ct. at 3164. Quite simply, the factual elements of this case-two-way video testimony by an overseas witness testifying to his business dealings with the defendants, or the defendants’ use of his signature on drug prescriptions — are so far removed from the original scope of Craig as to render Craig inapplicable.
II.
The majority’s errors did not end with its decision to use the Craig test; the majority also applied the test incorrectly. In my view, a proper application of the Craig test would, in any event, have determined that the use of the two-way video procedure in this case satisfied the Confrontation Clause.
Even if the Craig test could be adapted to apply to the testimony of witnesses who are beyond the court’s subpoena power, it is clear that the unavailability of a witness would have to be a factor in the court’s evaluation of whether a procedure satisfied Craig's requirement that the procedure be necessary to serve an important government interest. The Craig test’s baseline scenario takes for granted that the child witness will give her testimony in some fashion; that is, the Craig necessity test leaves to one side an option that would simultaneously protect the child from the trauma of testifying and honor the defendant’s confrontation rights: simply not asking the child to testify. In the case of an unavailable witness, securing the testimony is impossible without denying the defendant a courtroom confrontation with the witness. Thus, properly translating the Craig test to a situation involving an unavailable witness would require counting the value of obtaining the witness’s testimony as an important public interest weighing in favor of permitting testimony through alternative means. Important testimony from a genuinely unavailable witness would almost always satisfy the Craig necessity test, so the analysis would turn on whether the method for securing the witness’s testimony would satisfy the second part of the Craig test, whether the alternative procedures do enough to ensure the reliability of the testimony.
The majority’s principal argument in its Craig analysis is that the two-way video procedure was not “necessary” within the meaning of Craig precisely because the district court could have ordered a Rule 15 deposition in which the defendant and the prosecution witnesses would have met face to face. I believe this line of thinking rests on a thorough misunderstanding of both the Confrontation Clause and the Rule 15 procedure.
To hear the majority tell it, the Confrontation Clause imposes a single one-size-fits-all requirement: a defendant must be afforded a face-to-face confrontation with the witnesses against him, and any face-to-face meeting between the defendant and *1333 the prosecution witnesses is sufficient, whether the meeting takes place in open court or in another forum such as a Rule 15 deposition.
The majority’s conception of the rule is both more permissive and more restrictive than the rules the Supreme Court has actually held to apply. As I have suggested, the required confrontation procedure differs depending on whether the witness is available to appear at trial: When a witness is available to appear in court, a mere face-to-face meeting between the defendant and the witness is not enough; instead, the witness must come to court and testify in the presence of the defendant and the factfinder. When a witness is unavailable to appear in court, a face-to-face meeting is not required at all.
When a witness is available for an in-person court appearance, the ideal is a face-to-face confrontation in open court: the Confrontation Clause not only demands that the defendant be present as the witness testifies; it also demands that the trier of fact be present. See, e.g., Coy v. Iowa, 487 U.S. 1012, 1021, 108 S.Ct. 2798, 2803, 101 L.Ed.2d 857 (1988) (describing “the irreducible literal meaning of the Clause” as “ ‘a right to meet face to face all those who appear and give evidence at trial’ ” (quoting California v. Green, 399 U.S. 149, 175, 90 S.Ct. 1930, 1944, 26 L.Ed.2d 489 (1970) (Harlan, J., concurring))); Green, 399 U.S. at 158, 90 S.Ct. at 1935 (describing the three values at the heart of the in-court confrontation requirement, the third being that it “permits the jury ... to observe the demeanor of the witness in making his statement, thus aiding the jury in assessing his credibility”); Barber v. Page, 390 U.S. 719, 725, 88 S.Ct. 1318, 1322, 20 L.Ed.2d 255 (1968) (“The right to confrontation ... includes both the opportunity to cross-examine and the occasion for the jury to weigh the demeanor of the witness.”); Mattox, 156 U.S. at 242-43, 15 S.Ct. at 339 (confrontation is designed to give the defendant the opportunity of “compelling [the witness] to stand face to face with the jury in order that they may look at him, and judge by his demeanor upon the stand and the manner in which he gives his testimony whether he is worthy of belief’). However, if a face-to-face meeting is simply impossible because the witness is truly unavailable, the Confrontation Clause imposes a less stringent confrontation requirement: no face-to-face meeting is required, but the witness’s statements will be admissible only if the defendant had a robust opportunity to cross-examine the witness. Cf. Crawford, 541 U.S. at 68, 124 S.Ct. at 1374 (prior testimonial statements can be admitted against a defendant only if the witness is unavailable and the defendant had a prior opportunity to cross-examine the witness).
When a court employs a Rule 15 deposition, the deposition does not function as a means of achieving the preferred ideal of full face-to-face confrontation. A Rule 15 deposition falls far short of that ideal, because the trier of fact is not present at the deposition. Instead, the Rule 15 deposition functions as a fallback procedure for obtaining testimony when a witness is unavailable. See United States v. Drogoul, 1 F.3d 1546, 1557 (11th Cir.1993) (“[T]he only proper use of a deposition in a criminal case is as substitute testimony when a material witness is unavailable for trial.” (emphasis added)). So a Rule 15 deposition falls squarely within the second category of procedures that need not involve face-to-face confrontation but are permissible only when the witness is unavailable.
The majority is correct that a defendant is entitled to be present at a Rule 15 deposition, but that requirement does not apply because Rule 15 has a special connection to the Confrontation Clause. Rather, the requirement simply comes *1334 from the terms of Rule 15 itself. Fed. R.Crim.P. 15(c).[5] Indeed, in United States v. Siddiqui, 235 F.3d 1318 (11th Cir.2000), a defendant argued before a panel of this Court that the Confrontation Clause barred a trial court from admitting testimony from two Rule 15 depositions that the defendant had monitored only by telephone. Id. at 1323-24. The panel squarely rejected the challenge, finding that even though the defendant had not been physically present at the depositions, he had been fully able to cross-examine the witnesses remotely. Id. This Court reached the same result in a similar case, United States v. Mueller, 74 F.3d 1152, 1156-57 (11th Cir.1996).
The majority does not deny that cases like Siddiqui and Mueller contradict its characterization of the relationship between Rule 15 and the Confrontation Clause. The majority simply dismisses such cases as “rare” and “exceptional.” It does not, however, even hint at identifying any distinguishing features that set those cases apart from this one. Nor does it explain why the unusual combination of circumstances in this case — the witnesses’ location in Australia, their refusal to appear in the United States, and their willingness to testify live and under oath by videoconference — cannot similarly be called “rare” and “exceptional.”
It is clear, then, that for the purposes of Confrontation Clause analysis, depositions under Rule 15 aré in no way superior to two-way videoconference testimony, or indeed, any other means of obtaining and preserving testimony that affords the defendant an adequate opportunity to cross-examine the witness. The majority’s assertion that a Rule 15 deposition has some special constitutional status is simply wrong.
If anything, a two-way videoconference during trial allows more effective cross-examination than a Rule 15 deposition does. The videoconference procedure lets the factfinder observe subtleties of tone, timing, body language, and overall demeanor as the lawyer asks questions, as the witness reacts on hearing the questions, and as the witness formulates and delivers answers to the questions. Indeed, the jury’s view may well be better than what it could have had in the courtroom. Moreover, when a witness testifies in a live videoconference, the judge can rule on objections immediately and otherwise manage the course of questioning and the conduct of counsel. Because the vi-deoconference takes place at the time of trial, the defendant and defense counsel know how the prosecution’s case has developed so far and can tailor their cross-examination accordingly. In any event, the jury will certainly be able to glean more from a television screen contemporaneously recording the examination than it *1335 can from deposition testimony dryly read from a transcript.
The majority suggests that regardless of the advantages of videoconferencing, the defendants appear to have preferred that these two witnesses testify by Rule 15 deposition. But the defendants did not request Rule 15 depositions; they only mentioned Rule 15 by way of opposing the government’s motion to permit video testimony. Indeed, the defendants might well have opposed motions by the government to allow Rule 15 depositions or admit the depositions into evidence. The Confrontation Clause is not concerned with the full range of tactical advantages that the use of one procedure or another might confer on the defense; it is concerned only with the defendant’s ability to challenge the prosecution witness’s testimony. Moreover, even if the defendants did in fact prefer a Rule 15 deposition specifically because it would provide advantages in cross-examination, the Confrontation Clause still would not demand that the court accede to the defendants’ preference. The Confrontation Clause guarantees defendants a fair cross-examination, not an ideal cross-examination. See Kentucky v. Stincer, 482 U.S. 730, 739, 107 S.Ct. 2658, 2664, 96 L.Ed.2d 631 (1987) (“[T]he Confrontation Clause guarantees only ‘an opportunity for effective cross-examination, not cross-examination that is effective in whatever way, and to whatever extent, the defense might wish.’ ” (quoting Delaware v. Fensterer, 474 U.S. 15, 20, 106 S.Ct. 292, 294, 88 L.Ed.2d 15 (1985) (per curiam))). Because the video testimony procedure provided the cross-examination that the Confrontation Clause requires, the fact that the defendants might have preferred a Rule 15 deposition is simply irrelevant.
The second requirement Craig established for dispensing with in-court confrontation is that the procedures used must carry adequate assurances of reliability. The two-way video procedure used in this case clearly met this important requirement. Though it did not bring the witnesses into the same room as the defendant and the jury, the procedure provided all the other elements that are the hallmarks of traditional in-court confrontation: the witnesses were under oath; the witnesses and the defendants could see the jury; the defendants and the jury could see the witnesses; and the defendants had a full opportunity to dispute the witnesses’ testimony through “cross-examination, the ‘greatest legal engine ever invented for the discovery of truth.’ ” California v. Green, 399 U.S. 149, 158, 90 S.Ct. 1930, 1935, 26 L.Ed.2d 489 (1970) (quoting 5 J. Wigmore, Evidence § 1367).
The Court in Craig found that one-way video transmission included enough of the “elements of confrontation — oath, cross-examination, and observation of the witness’ demeanor — ” to make the testimony “reliable and subject to rigorous adversarial testing in a manner functionally equivalent to that accorded live, in-person testimony.” Craig, 497 U.S. at 851, 110 S.Ct. at 3166. Surely, the two-way video transmission in this case must have been enough to satisfy the Craig test, since it provided everything the one-way video procedure provided and additionally allowed the witnesses a view of the remote courtroom. Again, in this case the witnesses testified under oath; the defendant, the judge, and the jury could see the witnesses as they gave their testimony; and the witnesses could see the attorneys, the defendant, and the jury. Moreover, there is no evidence to suggest that defects in the video transmission impaired effective cross-examination of the witnesses. The record suggests that whatever defects there were in the transmission were promptly addressed. The defendants could have brought the remaining defects, if there were any, to the court’s attention so that the court could remedy the situation at that time. Every core *1336 element of confrontation was present to the maximum extent possible under the circumstances.
In short, the only device the Confrontation Clause requires a court to avail itself of is the physical production of the witness in the courtroom. But, if it is simply not possible to physically bring the witness to the courtroom, the court then may resort to substitute methods. The Confrontation Clause expresses no preference between substitute methods that place the defendant in the physical presence of the witness, such as Rule 15 depositions, and methods where the defendant is not physically present, such as two-way video testimony. The basic limitation the Confrontation Clause imposes on all of these methods, however, is that the defendant must have a meaningful opportunity to cross-examine the witness under oath before the testimony can be admitted.
Finally, in determining whether a witness is unavailable for purposes of the Confrontation Clause, “[t]he ultimate question is whether the witness is unavailable despite good-faith efforts undertaken prior to trial to locate and present that witness.” Ohio v. Roberts, 448 U.S. 56, 74, 100 S.Ct. 2531, 2543, 65 L.Ed.2d 597 (1980), overruled in part on other grounds by Crawford v. Washington, 541 U.S. 36, 124 S.Ct. 1354, 158 L.Ed.2d 177 (2004); see also United States v. Siddiqui, 235 F.3d 1318, 1324 (11th Cir.2000). The district court properly determined that the witnesses were beyond the subpoena power of the United States and were genuinely unwilling to appear at trial despite the government’s efforts. Cf. Siddiqui, 235 F.3d at 1324 (upholding a district court’s findings that two witnesses outside the United States were unavailable for Confrontation Clause purposes). The witnesses were genuinely unavailable, so their testimony fell outside the ambit of Maryland v. Craig.
Most respectfully, I believe that my colleagues have lost sight of what the Sixth Amendment Confrontation Clause was designed to do: prevent the government from obtaining summary convictions based on ex parte examinations that the defendant had no opportunity to oppose through the critical engine of cross-examination. The majority’s holding has reduced the Clause’s protections to an abstract and sterile rule that states that unless the defendant and the witness can be brought together in the same room, the witness’s testimony must be excluded, no matter what steps the court takes to ensure fair and effective cross-examination.
The majority’s holding today disserves the Constitution and slights the paramount public interest of admitting competent and reliable testimony into evidence in criminal trials. I dissent.

. The defendants have also argued that because the witnesses were in Australia, they were not subject to a penalty for perjury under U.S. law. Because the majority does not address the issue, I assume for the purposes of my analysis that the witnesses' oaths carried the possibility of a penalty for perjury.

. The majority suggests that I have incorrectly applied Crawford to the facts of this case. Majority Op. at 1314 n.4. I cite Crawford, however, precisely because it is one of many Supreme Court cases addressing the problem we face today: what to do about the testimony of a witness who is genuinely unavailable, whether because the witness stands on foreign soil and cannot be compelled to appear, or because the witness could not be compelled to testify because of a spousal privilege. *1330 Indeed, Crawford is the most recent of many Supreme Court cases standing for the general proposition that in-person confrontation is not required when a witness is unavailable, so long as the witness is subject to adequate cross-examination.

. Indeed, one way to state the holding of Crawford is that there is no analogue to Craig in the context of prior sworn testimony. Craig declares that when the witness is available and thus should be brought to testify in the defendant’s presence, the requirement of in-person confrontation can be dispensed with only on a showing of necessity and reliability. Crawford holds that in the case of prior testimonial statements, such a showing of necessity and reliability cannot substitute for the mode of confrontation the Constitution demands, which is cross-examination. See Crawford, 541 U.S. at 60-69, 124 S.Ct. at 1369-74 (overruling Ohio v. Roberts, 448 U.S. 56, 100 S.Ct. 2531, 65 L.Ed.2d 597 (1980), insofar as that case permitted admission of prior testimonial statements based on "indicia of reliability” other than cross-examination, because cross-examination is the only indici-um of reliability the Confrontation Clause deems acceptable).

. The trial transcript does not describe the exact details of the videoconferencing setup, but the district court’s order conditioned its approval of the video testimony procedure "upon the video teleconference equipment being positioned so that the witness is able to see the attorneys, defendant, and jury and that those parties are also able to see the testifying witness.”

. The relevant portion of the rule reads:
(c) Defendant’s Presence.
(1) Defendant in Custody. The officer who has custody of the defendant must produce the defendant at the deposition and keep the defendant in the witness’s presence during the examination, unless the defendant:
(A) waives in writing the right to be present; or
(B) persists in disruptive conduct justifying exclusion after being warned by the court that disruptive conduct will result in the defendant’s exclusion.
(2) Defendant Not in Custody. A defendant who is not in custody has the right upon request to be present at the deposition, subject to any conditions imposed by the court. If the government tenders the defendant's expenses as provided in Rule 15(d) but the defendant still fails to appear, the defendant — absent good cause — waives both the right to appear and any objection to the taking and use of the deposition based on that right.
Fed.R.Crim.P. 15(c).