[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
FEBRUARY 13, 2006
THOMAS K. KAHN
CLERK

————————————————

No. 02-13654

————————————————

D. C. Docket No. 00-00109 CR-N-2

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

ANITA YATES,
ANTON F. PUSZTAI,

Defendants-Appellants.

————————————————

Appeals from the United States District Court
for the Middle District of Alabama

————————————————

**(February 13, 2006)**

Before EDMONDSON, Chief Judge, TJOFLAT, ANDERSON, BIRCH, DUBINA, BLACK, CARNES, BARKETT, HULL, MARCUS, WILSON, PRYOR and COX[*], Circuit Judges.

COX, Circuit Judge:

---

[*]Senior Circuit Judge Cox elected to participate in this decision pursuant to 28 U.S.C. § 46(c).

The court took this case en banc to consider whether witness testimony presented on a television monitor at a criminal trial in Montgomery, Alabama, by live, two-way video conference with witnesses in Australia, violated the Defendants' Sixth Amendment right to confront the witnesses against them. Holding that it did, we vacate the convictions and remand for a new trial.

## I. BACKGROUND & PROCEDURAL HISTORY

Anton Pusztai and Anita Yates ("Defendants") were tried in the Middle District of Alabama for mail fraud, conspiracy to defraud the United States, conspiracy to commit money laundering, and various prescription-drug-related offenses arising out of their involvement in the Norfolk Men's Clinic, an Internet pharmacy based in Clanton, Alabama.

At the pre-trial motion stage, the Government moved for an order allowing the introduction of testimony from two witnesses in Australia by means of live, two-way video conference. (R.2-248.) In support of its motion, the Government stated that Mr. Paul Fletcher Christian (who allegedly processed customer Internet payments for the Defendants) and Dr. Tibor Konkoly (whose name the Defendants allegedly used on Internet drug prescriptions) were both "essential witnesses to the government's case-in-chief." (*Id.* at 1.) The Government further submitted: "[a]lthough both witnesses are willing to testify at trial via video teleconference, they are unwilling to

2

travel to the United States. Because they are beyond the government's subpoena powers, the government seeks permission for these witnesses to testify through the use of teleconference facilities." (*Id.* at 2.)

Defendants opposed the motion, arguing that admission of such testimony would violate their Sixth Amendment rights to confrontation because it would deny them face-to-face encounters with the witnesses against them. (R.2-261; R.3-314 at 3.)[1]

The district court granted the Government's motion, finding that Defendants' confrontation rights would not be violated because the two-way video conference would allow Defendants to see the witnesses and the witnesses to see Defendants during the testimony. (R.3-314.) The court found that the Australian witnesses were unwilling to travel to the United States for trial, (*id.* at 2.); the Defendants did not contest this finding. The court also found that the Government asserted an "important public policy of providing the fact-finder with crucial evidence," (*Id.* at 19.), and that "the Government also has an interest in expeditiously and justly resolving the case." (*Id.* at 22.)

---

[1]Yates's written opposition to the Government's motion is in the record on appeal, but a search for Pusztai's opposition is fruitless. The docket sheet does not contain an entry for the document. But Pusztai apparently submitted a response to the Government's motion, because the Government cites his response in its reply brief. Pusztai objected to the introduction of the testimony at trial, however, and the Government does not contend that the issue is not preserved.

3

Because the courtroom was not outfitted with video equipment, the trial was temporarily moved to the United States Attorney's office for the video conference. At trial, Defendants objected on Sixth Amendment grounds to the introduction of the testimony. (R.8 at 347-48; R.11 at 103.) Christian and Konkoly were sworn in by a deputy clerk of the federal district court and acknowledged that they understood that their testimony was under oath and subject to penalty for perjury. The Government then questioned the witnesses by means of two-way video conference. Both Defendants, the jury, and the judge could see the testifying witnesses on a television monitor; and the witnesses could see the temporary courtroom in the U.S. Attorney's conference room.[2] Each Defendant's attorney cross-examined both Konkoly and

---

[2]The record reflects, however, some technical difficulties that impacted the abilities of the witnesses, Defendants and counsel to see each other and to communicate during the video conference. For example, during Christian's testimony, the following exchange occurred:

| Q. [by Assistant U.S. Attorney] | I'm going to ask the gentleman controlling this to take a look around the courtroom here so you can see everybody that's in this room and ask you if you see Mr. Pusztai. [Camera scanning the courtroom] . . . Sir, have you seen Mr. Pusztai? |
|---|---|
| A. [by Christian] | I think so. It's a little bit hard to focus on the camera. There, are we? Yes. |

(R.11 at 106.)

Konkoly's inability to see clearly was also a problem:

| Q. [by Assistant U.S. Attorney] | Do you know whether or not you would recognize the partner that you |
|---|---|

4

Christian. The jury found the Defendants guilty on all counts. Defendants appeal those convictions.

In a published opinion, a three-judge panel of this court, applying the rule articulated in *Maryland v. Craig*, 497 U.S. 836, 110 S. Ct. 3157 (1990), held that Defendants' Sixth Amendment confrontation rights were violated by the admission of the testimony of these witnesses by means of two-way video conference. *United States v. Yates*, 391 F.3d 1182 (11th Cir. 2004). The panel vacated the convictions and remanded for a new trial. *Id.* The Government petitioned for rehearing en banc. This court vacated the panel opinion and granted the petition for rehearing en banc to

---

|  |  |
|---|---|
|  | have referred to that was at the dinner with Mr. Pusztai? |
| A. [by Konkoly] | I think so. <br> [Camera scanning the courtroom] <br> . . . May I have a close look at the lady on the left-hand side in the back, please? |
| The Court: | Yes, you may. |
| Technician: | This is the closest I can zoom in. |
| [by Konkoly] | If you could go to the side a bit, please. I cannot see from the corner of the screen. [Scanning] . . . <br> No I can't not [sic] say that categorically. I cannot recognize the face at the present time. |

(R.11 at 161-62.)

5

consider this important constitutional question. *United States v. Yates*, 404 F.3d 1291

(11th Cir. 2005).

## II. ISSUES ON APPEAL AND STANDARD OF REVIEW

We discuss only two of the issues Pusztai and Yates present on appeal.[3]  First,

Defendants contend that their Sixth Amendment rights to confrontation were violated

by admission of this testimony taken from witnesses who were physically present in

Australia while Defendants were in Montgomery, Alabama.  In support of this

contention, they maintain that their rights to confront the witnesses face-to-face were

violated and that the witnesses were not given a proper oath.  The admission of

testimony by two-way video conference presents a mixed question of law and fact;

therefore, we review de novo Defendants' claim that their Sixth Amendment rights

were violated. *See Lilly v. Virginia,* 527 U.S. 116, 137, 119 S. Ct. 1887, 1900 (1999).

---

[3]Defendants also contend that the district court erred by: (1) denying their motions for mistrial based on a *Jencks*/*Brady* violation; (2) barring Yates from cross-examining Pusztai about a relationship with another woman; and (3) denying Pusztai's motion for personal access to computer disks related to his defense. We find no merit in these contentions. *See* 11th Cir. Rule 36-1.

Defendants further argue that the district court erred in the imposition of their sentences.  We need not address this argument because we set aside Defendants' convictions and order a new trial.

Finally, in her en banc brief, Yates contends that admission of the video conference testimony violated Federal Rule of Criminal Procedure 26 because the testimony was not "taken in open court." Fed. R. Crim. P. 26.  Because this argument was not made in her initial appellate brief, it is waived. *United States v. Dockery*, 401 F.3d 1261, 1262-63 (11th Cir. 2005).  We express no opinion as to whether Rule 26 was violated.

The second issue we discuss is Defendants' contention that the district court erred in denying their motions for judgment of acquittal on the ground that the evidence was insufficient to support their convictions. We review this ruling de novo. *United States v. Pistone*, 177 F.3d 957, 958 (11th Cir. 1999).

### III. DISCUSSION

#### A. The Confrontation Clause

Defendants argue that admission of the video-conferenced testimony was not necessary to further an important public policy and thus violated the rule announced in *Craig*, 497 U.S. 836, 110 S. Ct. 3157.

The Sixth Amendment provides: "In all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him." U.S. Const. amend. VI. This clause, known as the Confrontation Clause, "guarantees the defendant a face-to-face meeting with witnesses appearing before the trier of fact." *Coy v. Iowa*, 487 U.S. 1012, 1016, 108 S. Ct. 2798, 2801 (1988). This right to a physical face-to-face meeting, however, is not absolute and may be compromised under limited circumstances where "considerations of public policy and necessities of the case" so dictate. *Craig*, 497 U.S. at 848, 110 S. Ct. at 3165. At issue in this appeal is whether the district court's findings demonstrate that denial of physical face-to-face confrontation was necessary to further an important public policy.

7

In *Craig*, the Supreme Court upheld, over a defendant's Sixth Amendment challenge, a Maryland rule of criminal procedure that allowed child victims of abuse to testify by one-way closed circuit television from outside the courtroom. 497 U.S. at 858, 110 S. Ct. at 3170. The defendant could see the testifying child witness on a video monitor, but the child witness could not see the defendant. *Id.* at 841-842, 110 S. Ct. at 3161. The defendant contended that this procedure violated his Sixth Amendment right to confrontation because he was denied a physical face-to-face encounter with the witness. *Id.* at 842, 110 S. Ct. at 3161-62. The Supreme Court approved Maryland's rule, stating: "though we reaffirm the importance of face-to-face confrontation with witnesses appearing at trial, we cannot say that such confrontation is an indispensable element of the Sixth Amendment's guarantee of the right to confront one's accusers." *Id.* at 849-850, 110 S. Ct. at 3165-66. The Court held that "[t]he Confrontation Clause reflects a preference for face-to-face confrontation at trial, a preference that must occasionally give way to considerations of public policy and the necessities of the case." *Id.* at 849, 110 S. Ct. at 3165. The Court explained, "a defendant's right to confront accusatory witnesses may be satisfied absent a physical, face-to-face confrontation at trial only where denial of such confrontation is necessary to further an important public policy and only where the reliability of the testimony is otherwise assured." *Id.* at 850, 110 S. Ct. at 3166.

The Government offers two arguments for why we should not apply the *Craig* rule in this case. First, it maintains that *Craig* should not apply because the testimony in this case was presented by two-way video conference rather than one-way video conference as in *Craig*. Second, it asserts that two-way video conference testimony is superior to testimony taken by deposition under Federal Rule of Criminal Procedure 15 in protecting the confrontation rights of defendants; therefore, it should be admissible whenever Rule 15 deposition testimony would be. We disagree with both arguments.

The Government relies on *United States v. Gigante*, 166 F.3d 75 (2d Cir. 1999), a case in which the Second Circuit approved the use of two-way, closed circuit television to present the testimony of a witness from an undisclosed location outside the courtroom. The *Gigante* court declined to apply the *Craig* standard, reasoning that, because the Supreme Court crafted its two-part "standard to constrain the use of one-way closed-circuit television, whereby the witness could not possibly view the defendant . . . , it is not necessary to enforce the *Craig* standard in this case." *Id.* at 81.

We reject this reasoning. The *Gigante* trial court should have applied *Craig*. In fact, it did hold the required evidentiary hearing, took evidence from medical experts, and found that both live witness testimony at trial <u>and</u> a Rule 15 deposition

9

were inappropriate in the trial of an accused mobster charged with, among other things, conspiracy to murder because the witness: (1) was a former mobster participating in the Federal Witness Protection Program, (2) was at an undisclosed location, and (3) was in the final stages of inoperable, fatal cancer. In addition, the district court found that the defendant was unable to travel due to his own medical problems. *Id.* at 80, 81. Thus, if the district court had applied the *Craig* test, its necessity standard likely would have been satisfied; to keep the witness safe and to preserve the health of both the witness and the defendant, it was necessary to devise a method of testimony other than live, in-court testimony and other than a Rule 15 deposition.

On review, the Second Circuit acknowledged that, "[t]here may well be intangible elements of the ordeal of testifying in a courtroom that are reduced or even eliminated by remote testimony." *Id.* at 81. Therefore, "the use of remote, closed-circuit television testimony must be carefully circumscribed." *Id.* at 80. Indeed, the Second Circuit held that Gigante's confrontation rights had been adequately protected by the district court through its procedure of holding an evidentiary hearing and making specific factual findings regarding the exceptional circumstances that made it inappropriate for the witness to appear in the same place as the defendant. *Id.* at 79-80, 81.

Our circuit precedent acknowledges that *Craig* supplies the proper test for admissibility of two-way video conference testimony. *See Harrell v. Butterworth*, 251 F.3d 926, 930 (11th Cir. 2001) (on habeas review, holding Florida Supreme Court's decision that *Craig* test was satisfied so as to allow two-way video testimony was not contrary to, nor an objectively unreasonable application of, federal law as determined by the Supreme Court). We are not alone. Four other circuits agree. The Eighth Circuit has explicitly rejected the argument that the *Craig* test does not apply to testimony presented my means of two-way video conferencing. *United States v. Bordeaux*, 400 F.3d 548, 554-55 (8th Cir. 2005) (declining to follow *United States v. Gigante*, 166 F.3d 75 (2d Cir. 1999) and finding that "'confrontation' via a two-way closed circuit television is not constitutionally equivalent to a face-to-face confrontation."). In addition, the Sixth, Ninth, and Tenth Circuits have applied the *Craig* rule to test the admissibility of two-way video testimony at trial. Indeed, for more than a decade, circuit courts have recognized that to allow prosecutorial presentation of child witness testimony via two-way closed-circuit television under the Child Victims' and Child Witnesses' Rights Statute, 18 U.S.C. § 3509, the findings of the trial court must satisfy the *Craig* test in order to satisfy the Confrontation Clause. *See, e.g., United States v. Turning Bear*, 357 F.3d 730, 737 (8th Cir. 2004)*; United States v. Moses,* 137 F.3d 894, 897-98 (6th Cir. 1998); *United*

11

*States v. Weekley,* 130 F.3d 747 (6th Cir. 1997); *United States v. Rouse*, 111 F.3d 561, 568 (8th Cir. 1997); *United States v. Quintero*, 21 F.3d 885, 892 (9th Cir. 1994); *United States v. Carrier,* 9 F.3d 867 (10th Cir. 1993); *United States v. Garcia*, 7 F.3d 885, 887-88 (9th Cir. 1993); *United States v. Farley*, 992 F.2d 1122, 1125 (10th Cir. 1993). The Second Circuit stands alone in its refusal to apply *Craig*. *See Gigante*, 166 F.3d 75.[4]

Because Defendants were denied a physical face-to-face confrontation with the witnesses against them at trial, we must ask whether the requirements of the *Craig* rule were satisfied, justifying an exception to the physical face-to-face confrontation requirement of the Sixth Amendment. As indicated earlier, under *Craig*, such testimony may be offered "only where denial of such confrontation is necessary to further an important public policy and only where the reliability of the testimony is otherwise assured." 497 U.S. at 850, 110 S. Ct. at 3166.

---

[4]Notably, both dissenting opinions argue (but the Government does not) that the proper standard to be applied is that stated in *Crawford v. Washington*, 541 U.S. 36, 124 S. Ct. 1354 (2004), the most recent Supreme Court case governing the admissibility of out-of-court testimonial statements. No doubt the Government passes on this argument because it recognizes that *Crawford* applies only to testimonial statements made prior to trial, and the live two-way video testimony at issue in this case was presented at trial.

The dissenters contend that the fact that a witness is legally unavailable necessarily means that any testimony given by that witness, by any means, is hearsay testimony subject only to the requirements of *Crawford*– unavailability and an opportunity to cross-examine. In addition to its departure from longstanding precedent, this reasoning assumes away the constitutional issue in this case– whether the confrontation that occurred is constitutionally sufficient. *Crawford* does not answer this question.

We reject the Government's argument that *Craig* does not apply because two-way video conference testimony is necessarily more protective of defendants' confrontation rights than the method of admitting testimony of an unavailable witness prescribed by Rule 15.[5] First, the Government's argument ignores the fact that Rule 15 gives the defendant the opportunity to be present at the deposition and thus an opportunity for physical face-to-face confrontation. Second, the Government concedes that the procedure used in this case is not authorized by the Federal Rules of Criminal Procedure. Rather, the Government argues, admission of video testimony is within the inherent powers of trial courts. But history demonstrates otherwise. In 2002, the Advisory Committee on the Criminal Rules suggested a revision to Federal Rule of Criminal Procedure 26 that would have allowed testimony by means of two-way video conferencing. Thereafter, the Supreme Court transmitted to Congress proposed amendments to the Federal Rules of Criminal Procedure. The Court declined to transmit the proposed revision to Rule 26 that would have allowed

---

[5]The district court found that the Government had demonstrated the existence of exceptional circumstances sufficient to justify the taking of a Rule 15 deposition. (R.3-314 at 26.) The Government contends, therefore, that it would have been proper to have read into the trial record deposition testimony taken pursuant to Rule 15. And, it argues– without citation other than *Gigante*– that two-way video conference testimony is constitutionally superior to admission of Rule 15 deposition testimony at trial because it allows defendants and witnesses to see each other (albeit through a television monitor), provides for cross-examination at the time of trial, and gives the jury the opportunity to see witnesses instead of just hearing their words read from a deposition transcript. Thus, the Government concludes, admission of two-way video conference testimony is sufficiently protective of defendants' Sixth Amendment rights to confrontation whenever deposition testimony taken pursuant to Rule 15 would be admitted.

testimony by two-way video conference. Justice Scalia filed a statement explaining that he shared "the majority's view that the Judicial Conference's proposed Fed. Rule Crim. Proc. 26(b) is of dubious validity under the Confrontation Clause of the Sixth Amendment to the United States Constitution . . . ." *Order of the Supreme Court*, 207 F.R.D. 89, 93 (2002). He remarked that the proposed amendments were "contrary to the rule enunciated in *Craig*" in that they would not limit the use of remote testimony to "instances where there has been a 'case-specific finding' that it is 'necessary to further an important public policy.'" *Id.* (citation omitted). Rule 26 was not revised to allow such testimony.

Thus, to accept the Government's reasoning on this point, we would need to accept its implicit claim that it knows best how to protect defendants' confrontation rights. We do not accept this claim. To do so would require that we disregard the history of the proposed amendments to Rule 26. Further, to accept the Government's claim, we would have to ignore the carefully-crafted provisions of Rule 15 that were designed to protect defendants' rights to physical face-to-face confrontation and instead approve a procedure not contemplated by the Federal Rules of Criminal Procedure.

The simple truth is that confrontation through a video monitor is not the same as physical face-to-face confrontation. As our sister circuits have recognized, the two

14

are not constitutionally equivalent. *See, e.g., United States v. Bordeaux*, 400 F.3d 548, 554-55 (8th Cir. 2005). The Sixth Amendment's guarantee of the right to confront one's accuser is most certainly compromised when the confrontation occurs through an electronic medium. Indeed, no court that has considered the question has found otherwise; even the *Gigante* court acknowledged that, "the use of remote, closed-circuit television testimony must be carefully circumscribed." *United States v. Gigante*, 166 F.3d 75, 80 (2d Cir. 1999).

As stated above, where a defendant's right to confront a witness against him will be affected, the determination of whether a particular case requires a departure from usual procedures must be made, by the trial court, on a case-by-case basis. *Craig*, 497 U.S. at 854, 110 S. Ct. at 3169. The court generally must: (1) hold an evidentiary hearing and (2) find: (a) that the denial of physical, face-to-face confrontation at trial is necessary to further an important public policy and (b) that the reliability of the testimony is otherwise assured. *Id.* at 850, 855, 110 S. Ct. at 3166, 3169. The first part of this test requires that the trial court find that it is essential to deny the defendant his right to face-to-face physical confrontation in order to serve the interest the government asserts. *See, id.* at 855, 110 S. Ct. at 3169 (stating that, in order to separate the witness and defendant, the problem must be the physical

15

presence of the defendant during the witness's testimony, not some other problem that could be remedied by a less intrusive solution).

In this case, the district court applied the *Craig* test to permit the Australian witnesses to testify by two-way video conference broadcast on a television monitor at the trial convened in the United States Attorney's Office in Montgomery, Alabama.[6] (R.3-314.) However, it held no hearing to consider evidence of the necessity for the video conference testimony. Rather, the trial court allowed the two-way video testimony based only on the Government's assertions in its motion that the Australian witnesses were unwilling to travel to the United States for trial, (*Id.* at 2.), and the Government's posited "important public polic[ies] of providing the fact-finder with crucial evidence," (*Id.* at 19.), "expeditiously and justly resolving the case," (*Id.* at 22.), and "ensuring that foreign witnesses can so testify." (*Id.* at 20.) The district court considered sufficient the Government's stated "important public policy of providing the fact-finder with crucial evidence," (*Id.* at 19), and "interest in expeditiously and justly resolving the case."[7] (*Id.* at 22.) We accept the district

---

[6]The Defendants also objected at trial to conducting the video conference in the United States Attorney's office. While the Defendants have abandoned this objection on appeal, we remain concerned with the shift of a trial to a United States Attorney's office.

[7]There is no evidentiary support for the district court's finding that the Government's interest in expeditiously and justly resolving the case created a necessity for the video testimony. However, the district court was critical of the Government's delay in identifying the need for the foreign witnesses' testimony. *See* n. 9 *infra*. There is some indication that the court was concerned that the trial would be delayed if a Rule 15 deposition needed to be taken. (R.3-314 at 26.) In that

16

court's statement that the witnesses were necessary to the prosecution's case on at least some of the charges, as the record supports the Government's assertion that the testimony was crucial to a successful prosecution of the Defendants and aided expeditious resolution of the case. The Government's interest in presenting the fact-finder with crucial evidence is, of course, an important public policy. We hold, however, that, under the circumstances of this case (which include the availability of a Rule 15 deposition), the prosecutor's need for the video conference testimony to make a case and to expeditiously resolve it are not the type of public policies that are important enough to outweigh the Defendants' rights to confront their accusers face-to-face.

The district court made no case-specific findings of fact that would support a conclusion that this case is different from any other criminal prosecution in which the Government would find it convenient to present testimony by two-way video conference. All criminal prosecutions include at least some evidence crucial to the Government's case, and there is no doubt that many criminal cases could be more

---

circumstance, allowing the video testimony aided the expedient resolution of the case only because the Government had already been less than diligent in seeking a Rule 15 deposition.

The district court also noted that "in today's world of the internet and increasing globalization, more and more situations will arise in which witnesses with material knowledge are beyond the subpoena power of the Court." (R.3-314 at 22.) Because this finding regarding the future of communications was not case-specific, we do not consider it. *See Craig*, 497 U.S. at 855-56, 110 S. Ct. at 3169 (requiring case-specific findings).

expeditiously resolved were it unnecessary for witnesses to appear at trial. If we were to approve introduction of testimony in this manner, on this record, every prosecutor wishing to present testimony from a witness overseas would argue that providing crucial prosecution evidence and resolving the case expeditiously are important public policies that support the admission of testimony by two-way video conference. *See, e.g., Remote Testimony– A Prosecutor's Perspective*, 35 U. Mich. J. L. Reform 719 (2002).

*Craig* requires that furtherance of the important public policy make it <u>necessary</u> to deny the defendant his right to a physical face-to-face confrontation. 497 U.S. at 852, 110 S. Ct. at 3167. In this case, there simply is no necessity of the type *Craig* contemplates. When one considers that Rule 15 (which provides for depositions in criminal cases) supplied an alternative, this lack of necessity is strikingly apparent.[8]

The version of Rule 15 in effect at the time of Defendants' trial states:

> Whenever, due to exceptional circumstances of the case it is in the interest of justice that the testimony of a prospective witness of a party be taken and preserved for use at trial, the court may upon motion of such party and notice to the parties order testimony of such witness be taken by deposition . . . .

---

[8]The dissenters argue that the majority accords Rule 15 quasi-constitutional status. That is incorrect. We do not suggest that Rule 15 is the only way to comply with the Confrontation Clause. We find only that the availability of a Rule 15 deposition demonstrates that, in this case, it was not necessary to deprive the Defendants of face-to-face meetings with their accusers.

Fed. R. Crim. P. 15(a) (2002). The rule continues, guaranteeing the defendant's right to physical face-to-face confrontation by specifically providing for his presence at the deposition. Fed. R. Crim. P. 15(b) (2002); *see also, Don v. Nix*, 886 F.2d 203, 206 (8th Cir. 1989) (holding that the Sixth Amendment guarantees a criminal defendant the opportunity to be present at the deposition of an accuser); *United States v. Benfield*, 593 F.2d 815, 821 (8th Cir. 1979) (same); *In re Letters of Request from Supreme Court of Hong Kong*, 821 F. Supp. 204, 209 (S.D.N.Y. 1993) (stating that Rule 15 guarantees defendants a right to be present at deposition so as to prevent use of deposition testimony at trial from violating Sixth Amendment right to confrontation). Even a defendant in custody "shall" be produced for the deposition, unless the defendant waives the right to be present in writing or is disruptive. Fed. R. Crim. P. 15(b) (2002). Indeed, the defendant's presence at the deposition is so important that, if he cannot afford to attend, the government may be ordered to pay the costs of travel and subsistence expenses for him and his attorney. Fed. R. Crim. P. 15(c) (2002).[9]

---

[9]The current version of Rule 15 continues to guarantee the defendant, whether in custody or not, an opportunity to be present at the deposition. Fed. R. Crim. P. 15(c). The current rule is more protective of indigent defendants, however. In a case like this, where the deposition would be taken at the request of the government, the current rule requires the government to pay the expenses of such a defendant's attendance. Fed. R. Crim. P. 15(d).

19

The Government argues that depositions later read into the record at trial, in fact, do occur without the defendant having been present. While that may be so, it is only the rare, exceptional case. Rule 15, properly utilized, protects a defendant's confrontation rights by affording the defendant an opportunity to be present at the deposition. *United States v. Dragoul*, 1 F.3d 1546, 1556 (11th Cir. 1993). It is the extraordinary circumstance where deposition testimony is taken despite a defendant's want of opportunity to be present. *See, e.g., United States v. Salim*, 855 F.2d 944, 949 (2d Cir. 1988) (finding that deposition may be taken, despite foreign country's refusal to allow defendant to be present but deferring question of whether admission of such a deposition would violate the Confrontation Clause). Even in those exceptional cases, courts have said that the government must have made diligent and reasonable efforts to produce the defendant at the taking of the deposition. *Id.* at 950-51; *see also United States v. McKeeve*, 131 F.3d 1, 8 (1st Cir. 1997). Other circuits have recognized that failure to make such efforts, followed by use of the deposition at trial, violates the defendant's confrontation rights. *See, e.g., Christian v. Rhode*, 41 F.3d 461, 465-467 (9th Cir. 1994).

On this record, there is no evidentiary support for a case-specific finding that the witnesses and Defendants could not be placed in the same room for the taking of pre-trial deposition testimony pursuant to Rule 15. Other than stating that the

witnesses would not come to the United States, the trial court gave no reason why the witnesses and Defendants could not all be in the same room for a pre-trial deposition.[10] The district court did not find that there was anything to prevent the Defendants from traveling to Australia to be present for a Rule 15 deposition. In fact, it found that the only reason a Rule 15 deposition may not have been an appropriate alternative to the video conference was that the Government had waited too long to request such a deposition.[11] (R.3-314 at 27.)

Moreover, in this case, the Government never requested a Rule 15 deposition. The Government has never maintained that any special circumstance created an inability to take such a deposition or that it would have been impossible to allow Defendants to attend such a deposition. Instead, it has argued only that testimony presented by two-way video conference is superior to testimony taken by Rule 15

---

[10]Other courts have identified legitimate reasons why physical face-to-face confrontation cannot be accommodated. This is not a case like *Craig* where, in order to preserve the delicate psyche of the child who was the alleged victim of abuse, it was necessary to devise a procedure by which the child testified outside the presence of the alleged abuser. Neither is it like *Gigante*, where, in order to protect the health and safety of the former mobster witness, it was necessary to use such a procedure to separate him from the alleged mob boss defendant. In this case, the Government's interest in "providing the fact-finder with crucial evidence" simply did not make it necessary to separate the Australian witness from the Defendant accused of illegal sales of prescription drugs.

[11]Despite finding that the Government knew of the Australian witnesses and their relevance for over two years before it made its pre-trial motion, that the Government had seriously delayed in making its request to admit video conference testimony by the Australian witnesses, and that this serious delay "would likely typify the kind of delay warranting the denial of a Rule 15 deposition," (R.3-314 at 27.), the district court found that the delay created "no real prejudice" to Defendants. (*Id.* at 9-10.) We disagree.

21

deposition with witness and defendant in the same room. While that might be the opinion of some, it was not the opinion of Defendants. Should they have wished to waive their rights to confrontation, they were able to do so. In the absence of such a waiver or case-specific findings of exceptional circumstances creating the type of necessity *Craig* contemplates, however, witnesses and criminal defendants should meet face-to-face. The Sixth Amendment so requires.

"The right guaranteed by the Confrontation Clause includes not only a 'Personal examination,' but also '(1) insures that the witness will give his statements under oath– thus impressing him with the seriousness of the matter and guarding against the lie by the possibility of a penalty for perjury; (2) forces the witness to submit to cross-examination, the 'greatest legal engine ever invented for the discovery of truth'; [and] (3) permits the jury that is to decide the defendant's fate to observe the demeanor of the witness in making his statement, thus aiding the jury in assessing his credibility." *Craig,* 497 U.S. at 845-846, 110 S. Ct. at 3163 (citations omitted). Defendants contend that the oath sworn by the Australian witnesses was not meaningful, either because it was invalid (as it was not administered in Australia, by someone authorized by federal law to give an oath outside of the United States) or because it did not subject the witnesses to a plausible threat of prosecution for perjury. We need not address these contentions. Because we find that denial of Defendants'

Sixth Amendment rights to face-to-face confrontation was not necessary to further an important public policy in this case, we proceed no further with the *Craig* analysis. We therefore do not consider the meaningfulness of the oath as administered.[12]

## B. Motions for Judgment of Acquittal

Finally, we turn to Defendants' contentions that the district court erred in denying their motions for judgments of acquittal based on their assertions that the evidence admitted at trial was insufficient to support their convictions. Pusztai made no argument in his initial appellate brief regarding the insufficiency of the evidence upon which he was convicted; thus, we do not consider the sufficiency of the evidence against him. Having reviewed the evidence admitted at trial, we find it sufficient to support Yates's convictions. Our conclusion is buttressed by the fact that Yates testified at trial, and the jury obviously rejected her testimony.[13] *See United States v. Brown*, 53 F.3d 312, 314 (11th Cir. 1995) ("[A] statement by a defendant, if disbelieved by the jury, may be considered as substantive evidence of the defendant's guilt.").

---

[12]There is also a question whether the Defendants timely challenged the oath or waived their argument that it was invalid. We need not address that question either.

[13] Yates argues in her briefs to the en banc panel that we should ignore evidence admitted in violation of the Confrontation Clause in determining the sufficiency of the evidence upon which she was convicted. She did not make this argument in her initial appellate brief. Therefore, she has waived it. *United States v. Dockery*, 401 F.3d 1261, 1262-63 (11th Cir. 2005). We apply the usual rule and consider all the evidence admitted at trial, including the video conference testimony.

23

Thus, retrial of Defendants is not barred because we reverse for trial error rather than on insufficiency of the evidence grounds. *See United States v. Scott*, 437 U.S. 82, 90-91, 98 S. Ct. 2187, 2193-94 (1978) ("The successful appeal of a judgment of conviction, on any ground other than the insufficiency of the evidence to support the verdict, poses no bar to further prosecution on the same charge.").

## IV. CONCLUSION

Because the presentation of live, two-way video conference testimony on a television monitor violated Defendants' Sixth Amendment confrontation rights, we vacate their convictions and remand for a new trial.

**CONVICTIONS VACATED; REMANDED FOR A NEW TRIAL**.

TJOFLAT, Circuit Judge, dissenting, in which BIRCH and MARCUS, Circuit Judges, join:

The court holds that a district court's decision to permit the live, at-trial testimony, via two-way video transmission, of a witness in a foreign country and beyond the court's subpoena power violates a defendant's Confrontation Clause[1] rights. According to the court, this is primarily because the availability of a deposition pursuant to Fed. R. Crim. P. 15[2] renders it "unnecessary" to deprive the defendant of his right to be in the physical presence of a testifying witness. Because I disagree with the majority's Confrontation Clause analysis and find fault in the court's application

---

[1] "In all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him . . . ." U.S. Const. amend. VI.

[2] Rule 15 provides, in relevant part:
Depositions
(a) When Taken.
    (1) In General. A party may move that a prospective witness be deposed in order to preserve testimony for trial. The court may grant the motion because of exceptional circumstances and in the interest of justice. . . .
. . .
(c) Defendant's Presence.
    (1) Defendant in Custody. The officer who has custody of the defendant must produce the defendant at the deposition and keep the defendant in the witness's presence during the examination, unless the defendant:
        (A) waives in writing the right to be present; or
        (B) persists in disruptive conduct justifying exclusion after being warned by the court that disruptive conduct will result in the defendant's exclusion.
    (2) Defendant Not in Custody. A defendant who is not in custody has the right upon request to be present at the deposition, subject to any conditions imposed by the court. . . .
Fed. R. Crim. P. 15.

25

of the governing Supreme Court precedents, I respectfully dissent. Part I analyzes the procedure under the framework utilized by the majority and finds no constitutional deficiency. Part II applies a different, and in my view correct, framework and arrives at the same conclusion. Part III briefly concludes.

## I.

The Confrontation Clause protects a defendant's right "to be confronted with the witness against him." U.S. Const. amend. VI. This right cannot be reduced to a singular right to be physically present as a witness testifies. As the Supreme Court has stated, the right protected by the Clause has several components:

> [T]he right guaranteed by the Confrontation Clause includes not only a "personal examination," but also "(1) insures that the witness will give his statements under oath – thus impressing him with the seriousness of the matter and guarding against the lie by the possibility of a penalty for perjury; (2) forces the witness to submit to cross-examination, the 'greatest legal engine ever invented from the discovery of truth'; [and] (3) permits the jury that is to decide the defendant's fate to observe the demeanor of the witness in making his statement, thus aiding the jury in assessing his credibility."

Maryland v. Craig, 497 U.S. 836, 845 - 46, 110 S. Ct. 3157, 3163, 111 L. Ed. 2d 666 (1990) (citation omitted) (alteration in original) (quoting California v. Green, 399 U.S. 149, 158, 90 S. Ct. 1930, 1935, 26 L. Ed. 2d 489 (1970)). As such, "face-to-face confrontation . . . is not the sine qua non of the confrontation right," id. at 847, 110 S. Ct. at 3164, and "must occasionally give way to considerations of public policy and

the necessities of the case," id. at 849, 110 S. Ct. at 3165 (quoting Mattox v. United States, 156 U.S. 237, 243, 15 S. Ct. 337, 340, 39 L.Ed. 409 (1895)) (internal quotation marks omitted).

Specifically, the Supreme Court has held that "a defendant's right to confront accusatory witnesses may be satisfied absent a physical, face-to-face confrontation at trial only where denial of such confrontation is necessary to further an important public policy and only where the reliability of the testimony is otherwise assured." Craig, 497 U.S. at 850, 110 S. Ct. 3166. The majority applies this two-part test and finds the procedure used here lacking for several reasons. First, the public policies the district court found in "providing the fact-finder with crucial evidence," and "expeditiously and justly resolving the case," while "important public policies," "are not the type of public policies that are important enough to outweigh the Defendants' rights to confront their accusers face-to-face." Ante at 16 - 17. Second, the majority faults the district court for making "no case-specific findings of fact that would support a conclusion that this case is different from any other criminal prosecution in which the Government would find it convenient to present testimony by two-way video conference." Ante at 17. Finally, the court suggests that, because of the availability of a deposition pursuant to Rule 15, it was not "necessary to deny the defendant his right to a physical face-to-face confrontation." Ante at 18.

27

Even assuming the majority has applied the correct constitutional test, I part ways with the majority's analysis from the beginning. It is beyond reproach that there is an important public policy in providing the fact-finder with crucial, reliable testimony and instituting procedures that ensure the integrity of the judicial process. See Ohio v. Roberts, 448 U.S. 56, 64, 100 S. Ct. 2531, 2538, 65 L. Ed. 2d 597 (1980), overruled on other grounds by Crawford v. Washington, 541 U.S. 36, 124 S. Ct. 1354, 158 L. Ed. 2d 177 (2004) ("[E]very jurisdiction has a strong interest in effective law enforcement, and in the development and precise formulation of the rules of evidence applicable in criminal proceedings."); Martinez v. Court of Appeal, 528 U.S. 152, 163, 120 S. Ct. 684, 692, 145 L. Ed. 2d 597 (2000) ("[T]he overriding state interest in the fair and efficient administration of justice" is significant enough to "outweigh an invasion of the appellant's interest in self-representation."); United States v. Scheffer, 523 U.S. 303, 308 - 09, 118 S. Ct. 1261, 1264, 140 L. Ed. 2d 413 (1998) ("A defendant's right to present relevant evidence is not unlimited, but rather is subject to reasonable restrictions. A defendant's interest in presenting such evidence may thus 'bow to accommodate other legitimate interests in the criminal trial process.' . . . [The interests here] include ensuring that only reliable evidence is introduced at trial [and] preserving the court members' role in determining credibility . . . ." (footnote and citations omitted) (quoting Rock v. Arkansas, 483 U.S. 44, 55, 107 S. Ct. 2704, 2711,

28

97 L. Ed. 2d 37 (1987) (quoting <u>Chambers v. Mississippi</u>, 410 U.S. 284, 295, 93 S. Ct. 1038, 1046, 35 L. Ed. 2d 297 (1973)) (internal quotation marks omitted))); <u>id.</u> at 312 - 13 (1998) ("It is equally clear that [Military Rule of Evidence 707, which makes polygraph evidence inadmissible in court-martial proceedings] serves a second legitimate governmental interest: Preserving the court members' core function of making credibility determinations in criminal trials. A fundamental premise of our criminal trial system is that 'the jury is the lie detector.'" (opinion of Thomas, J.) (quoting <u>United States v. Barnard</u>, 490 F.2d 907, 912 (9th Cir. 1973)) (emphasis omitted)); <u>United States v. Koblitz</u>, 803 F.2d 1523, 1528 (11th Cir. 1986) (holding that "the Government's interest in the efficient administration of justice" outweighed appellants' Sixth Amendment right to be represented at trial by their counsel of choice); <u>United States v. Gigante</u>, 971 F. Supp. 755, 756 - 57 (E.D.N.Y. 1997) ("American criminal procedure . . . is pragmatic. It recognizes that this ideal condition [a witness testifying in person, in court] can not be made available in every instance if there is to be an effective search for the truth in an atmosphere protecting the defendant's needs for fairness and due process and the public's right to protection against crime."); <u>Carlsen v. Morris</u>, 556 F. Supp. 320, 322 (D.C.Utah 1982) ("The intent of the statute is to prevent interference with the fair administration of justice, an unquestionably compelling governmental interest."); <u>Harrell v. State</u>, 709 So. 2d

29

1364, 1370 (Fla. 1998) ("[T]he [foreign] witnesses were absolutely essential to this case. . . . [T]here is an important state interest in resolving criminal matters in a manner which is both expeditious and just. In order to do that in this case, the testimony of these two witnesses was a necessity.").[3] Indeed, ensuring the reliability of admitted testimony and safeguarding the integrity of the judicial process are core functions of the Confrontation Clause itself: "The central concern of the [Clause] is to ensure the reliability of the evidence against a criminal defendant by subjecting it to rigorous testing in the context of an adversary proceeding before the trier of fact." Craig, 497 U.S. at 845, 110 S. Ct. at 3163 (emphasis added); see also White v. Illinois, 502 U.S. 346, 356 - 57, 112 S. Ct. 736, 743, 116 L. Ed. 2d 848 (1992) ("[T]he Confrontation Clause has as a basic purpose the promotion of the 'integrity of the fact-finding process.'" (quoting Coy v. Iowa, 487 U.S. 1012, 1020, 108 S. Ct. 2798, 2802, 101 L. Ed. 2d 857 (1988) (quoting Kentucky v. Stincer, 482 U.S. 730, 736, 107 S. Ct. 2658, 2662, 96 L. Ed. 2d 631 (1987)) (internal quotation marks omitted))).

---

[3] Despite the majority's conclusion that public policy at stake here is not significant enough "to outweigh the Defendants' rights to confront their accusers face-to-face," ante at 17, it is clear that the majority's opinion is focused primarily on the availability of a deposition as an alternative to obtain a witness's testimony. The majority does not here reject the use of the two-way procedure where a deposition is not feasible, or in the "rare, exceptional case," ante at 19, where presence at a deposition cannot be guaranteed. Accordingly, the court's opinion should not be read to hold that the public policies involved here are not significant enough to satisfy the first prong of the Craig analysis.

Moreover, providing the fact-finder with reliable testimony and justly resolving the case are the same public policies that were found important enough to warrant the one-way procedure approved in Craig. Despite the Craig Court's suggestion that the public policy at issue was the "State's interest in the physical and psychological well-being of child abuse victims," Craig, 497 U.S. at 853, 110 S. Ct. at 3167, it is clear that depriving a defendant of his right to physical presence is not "necessary" to further that obviously compelling interest. The State could just as easily further this interest by not forcing the child to testify. Indeed, Justice Scalia remarked as much in dissent: "The State's interest here is in fact no more and no less than what the State's interest always is when it seeks to get a class of evidence admitted in criminal proceedings: more convictions of guilty defendants." Id. at 867, 110 S. Ct. at 3175 (Scalia, J., dissenting). In other words, the State's interests were to provide the fact-finder with reliable testimony, ensure the integrity of the judicial process, and foster respect for the rule of law. That these interests can come into conflict with a defendant's right to physical presence as a result of physical confrontation itself as in Craig, as opposed to the limitations on a court's subpoena power as here, does nothing to detract from the importance of these interests.

In fact, it is precisely because of the importance of obtaining reliable testimony that this court has repeatedly expressed its concern with the use of depositions in lieu

31

of trial testimony. See United States v. Drogul, 1 F.3d 1546, 1551 (11th Cir. 1993) ("Depositions generally are disfavored in criminal cases. . . . In particular, because of the absence of procedural protections afforded parties in the United States, foreign depositions are suspect and, consequently, not favored."); id. at 1552 ("The primary reasons for the law's normal antipathy toward depositions in criminal cases are the factfinder's usual inability to observe the demeanor of deposition witnesses, and the threat that poses to the defendant's Sixth Amendment confrontation rights." (footnote omitted)); United States v. Milian-Rodriguez, 828 F.2d 679, 686 (11th Cir. 1987) ("The decision whether to allow . . . depositions is committed to the discretion of the district court, but the use of depositions in criminal cases is not favored because the factfinder does not have an opportunity to observe the witness'[s] demeanor." (citation omitted)). That a federal rule of criminal procedure provides for presence at a deposition, see Fed. R. Crim. P. 15(c), is irrelevant to whether the two-way video transmission is necessary to further the important public policy of providing important, credible evidence at trial.[4] The State's interest is not merely in providing evidence, it is in providing reliable evidence. In this regard, the two procedures are

_____

[4] While it is true that the Rule does provide a defendant with an opportunity for presence, as discussed infra, there is no reason to believe that the Constitution guarantees a defendant's presence at a deposition. I find it highly problematic that the constitutionality of a procedure can rest on the whim of the Rules drafters. Either the procedure used here is adequate to protect a defendant's Confrontation Clause right or it is not. That determination ought not change every time the Rules do.

not equivalent, and it is certainly within the discretion of a trial court to determine that a deposition is not an adequate replacement for testimony at trial, before the finder-of-fact.

In some cases a trial court may determine that a deposition is a satisfactory substitute for live testimony and the added Confrontation Clause benefit of presence at the deposition renders the deposition the preferred method for obtaining the testimony. In other cases, the court may determine that the opportunity for a credibility assessment provided by live, two-way transmission is of particular importance to ensure the reliability of the testimony. Such a determination, however, is unequivocally case-specific. It may depend on the technology available for the deposition. Whether the deposition will be taped and played before the jury or simply read into evidence is an important factor to consider in determining whether a deposition is sufficiently reliable to substitute for in-court testimony. Similarly, the type (e.g., one-way v. two-way transmission) and quality of the technology to be used during transmission should be taken into account. A district court might also consider the necessity and nature of the witness's testimony. Specifically, whether the testimony is accusatory or descriptive in nature might impact the court's determination of the reliability enhancement that could result from physical presence. Additionally, the court should consider the effect of delay caused by a deposition in

a foreign country during the course of trial. Not only could the delay affect the "efficient" administration of justice, but a court might also determine that a lengthy delay would affect the jury's recollection or the availability of other witnesses. The court might also consider the importance of the testimony being given in the context of trial rather than months or years prior. The court should also consider the extent a given alternative deprives a defendant of his Confrontation Clause rights to "physical presence, oath, cross-examination, and observation of demeanor by the trier of fact . . . ." Craig, 497 U.S. at 846, 110 S. Ct. at 3163.[5] Needless to say, these considerations are not exhaustive, and it is well within the sound discretion of the district court to determine how such factors impact the reliability and feasibility of a deposition. An abstract determination that the availability of a deposition makes depriving a defendant of his right to physical presence at trial unnecessary to further the public policy of providing the fact-finder with reliable testimony ignores the realities of trial and presumes that all forms of testimony are created equal.

This case-specific determination of the reliability of a deposition as opposed to live, two-way video testimony is precisely what the Supreme Court required in Craig

---

[5] I hasten to note that I do not believe a court should engage in a conceptual balancing of whether a particular confrontation element is invariably more important than another. I do believe, however, that a district court must take into account the extent to which a defendant's right to confrontation has been abridged; extensive deprivations are at least prima facie evidence of unreliability.

and the majority here finds lacking. The majority rebukes the district court for not making "case-specific findings of fact that would support a conclusion that this case is different from any other criminal prosecution," ante at 17,[6] or that "the witnesses and Defendants could not be placed in the same room for the taking of pre-trial deposition testimony pursuant to Rule 15," ante at 20. In doing so, the majority here makes too much of the unique context of Craig. In Craig, it was confrontation itself that had to be avoided in order to obtain the testimony. Accordingly, the Court required a case-specific finding that depriving the defendant of his right to physical presence "is necessary to protect the welfare of the particular child witness who seeks to testify," and that "the child witness would be traumatized, not by the courtroom

---

[6] The majority proceeds to exaggerate the "floodgate" potential of permitting the two-way procedure in this case. The court claims that

> [a]ll criminal prosecutions include at least some evidence crucial to the Government's case, and there is no doubt that many criminal cases could be more expeditiously resolved were it unnecessary for witnesses to appear at trial. If we were to approve introduction of testimony in this manner, on this record, every prosecutor wishing to present testimony from a witness overseas would argue that providing crucial evidence and resolving the case expeditiously are important public policies that support the admission fo testimony by two-way video conference.

Ante at 17. Yet what the majority ignores is that it was not just more convenient to use two-way video transmission to obtain live testimony in this case, it was necessary to do so. This is because the witnesses were beyond the district court's subpoena power, and hence, unavailable. Despite the majority's suggestion, this is not true of every overseas witness. Pursuant to 28 U.S.C. § 1783, "[a] court of the United States may order the issuance of a subpoena requiring the appearance as a witness before it . . . of a national or resident of the United States who is in a foreign country . . . ." Thus, it is only foreign nationals outside the United States who are beyond the federal courts' subpoena power. So despite any given prosecutor's sincerest wishes, unless a witness is truly unavailable, making two-way transmission necessary to obtain the witness's testimony at trial, the prosecution has no choice but to have the witness testify in the physical presence of both the defendant and the court.

35

generally, but by the presence of the defendant." Craig, 497 U.S. at 855 - 56, 110 S. Ct. at 3169. Here, there is no argument that the effect of physical confrontation itself necessitates depriving the defendant of his full Confrontation right. Rather, the limitation of the court's subpoena power so requires. As such, a finding that the defendant cannot be physically in the same room as the witness would fail to address the reason for the potential deprivation. Accordingly, once it is determined that a particular witness cannot be haled into court, and will not appear voluntarily, it should be left to the court's case-by-case discretion to determine if there are other alternatives to two-way transmission that both provide comparably reliable testimony and fully protect the defendant's Confrontation Clause rights. If no such alternative is available, the court has made a case-specific determination that depriving the defendant of his right to presence is necessary to further the important public policy of providing the fact-finder with dependable testimony and preserving the integrity and reliability of the judicial process.[7] It is this individualized determination that makes a particular case "different from any other criminal prosecution."[8]

---

[7] There is no suggestion that the trial court abused its discretion in making its determination in this case.

[8] The majority also suggests that the failure to amend Rule 26 of the Federal Rules of Criminal Procedure to allow for two-way video transmission in certain cases is somehow relevant to the resolution of this case. Ante at 13 - 14. It is unclear whether the majority's discussion goes to the constitutionality of the procedure or the scope of courts' inherent power to authorize it. To the extent the majority suggests that either the rejection of the proposed amendment or Justice Scalia's statement can be construed as a Supreme Court statement on the constitutionality of the

36

The circumstances of cases such as this foreclose the possibility of the ideal Confrontational Clause situation – namely cross-examination of a sworn-in witnesses in the physical presence of both the defendant and the finder-of-fact.  Thus, to the extent testimony will be admitted in these circumstances, the defendant's Confrontation rights must be abridged in some way.  None of the alternatives are identical to each other or to live testimony at trial.  Nor can the alternatives always be considered perfect substitutes for one another.  Here, the district court, in the exercise

procedure, it is flatly wrong.  To begin, Justice Scalia only suggests that the proposed amendment is of "dubious validity," Amendments to Rule 26(b) of the Federal Rules of Criminal Procedure, 207 F.R.D. 89, 93 (2002) (statement of Scalia, J.), a statement which just as easily can be made of every constitutional challenge the Supreme Court elects to hear.  More fundamentally, however, the opinion represents nothing more than the legal musings of a Supreme Court Justice on an issue that has yet to be briefed and argued in a case or controversy before the Court.  "[S]uch advance expressions of legal judgment upon issues which remain unfocused because they are not pressed before the Court with that clear concreteness provided when a question emerges precisely framed and necessary for decision from a clash of adversary argument exploring every aspect of a multifaceted situation embracing conflicting and demanding interests, we have consistently refused to give." United States v. Fruehauf, 365 U.S. 146, 157, 81 S. Ct. 547, 554, 5 L. Ed. 2d 476 (1961).  Justice Scalia has recognized as much: "In my view even the adopting Justices' thoughts, unpromulgated as Rules, have no authoritative (as opposed to persuasive) effect, any more than their thoughts regarding an opinion (reflected in exchanges of memoranda before the opinion issues) authoritatively demonstrates the meaning of that opinion." Tome v. United States, 513 U.S. 150, 168, 115 S. Ct. 696, 706, 130 L. Ed. 2d 574 (1995) (Scalia, J., concurring).  Accordingly, the Government's argument is no more an "implicit claim that it knows best how to protect defendants' [constitutional] rights," ante at 14, than is any argument proffered by the Government in a case where the defendant happens to disagree.

To the extent the majority ascribes a limitation on the court's inherent power to the rejection of the rule, it makes much ado about nothing.  Not only could the attempt to amend Rule 26 be viewed as a constriction or delineation of courts' inherent power to authorize the procedure as opposed to a grant of power the courts previously lacked, but it is fairly uncontroversial that it was and remains well within courts' inherent power to authorize the procedure for defendant's witnesses or for prosecution witnesses so long as the defendant consents. For persuasive authority see 207 F.R.D. at 98 (2002) (statement of Breyer, J.).  Whether a court may similarly authorize such a procedure for prosecution witnesses without a defendant's consent is a constitutional issue, not one of inherent authority.

of its sound discretion, made a considered determination that live, two-way video transmission of unavailable witnesses' testimony was necessary to further the important public policy of providing the factfinder with crucial, reliable testimony. This is all Craig demands.[9]

## II.

While I find serious fault with the majority's application of the Craig test, I am perhaps most concerned about the illogical result that follows from the court's failure to evaluate the procedure in its proper constitutional context. The majority's analysis implicitly places two-way video testimony in constitutional purgatory. The witnesses are not "present" enough to be considered in the defendant's "presence," but are somehow "present" in court where the defendant is also "present." In other words, despite the majority's determination that the witnesses were not in the defendant's presence, it analyzed the testimony as if it were given "in court," as opposed to what it really is – hearsay. Viewing the testimony in this light removes any doubt as to the procedure's constitutionality.

---

[9] The second prong of the Craig analysis, requires the district court to determine that "the reliability of the testimony is otherwise assured." Craig, 497 U.S. at 850, 110 S. Ct. 3166. Thus, the court must find not only that the two-way video procedure is more reliable than a deposition, but intrinsically reliable as well. I see nothing in the record to suggest that the district court abused its discretion in this regard.

Evaluating the procedure here as "out-of-court testimony," may, at least initially, seem precluded by Craig itself. After all, if the Supreme Court analyzed the one-way procedure in Craig as in-court, how could the two-way procedure at issue here be considered anything but in-court? The difference between Craig and the procedure here results, I believe, from the type of testimony for which the video transmission substitutes. In Craig, the witness was available to testify; the one-way procedure was intended to reduce the psychological trauma of doing so. Thus, the transmission served to replace the testimony of a witness who was otherwise available to testify in open court. Justice Scalia, in dissent, relied on the witness's availability to distinguish the testimony from hearsay:

> Some of the Court's analysis seems to suggest that the children's testimony here was itself hearsay of the sort permissible under our Confrontation Clause cases. That cannot be. Our Confrontation Clause conditions for the admission of hearsay have long included a "general requirement of unavailability" of the declarant. "In the usual case . . ., the prosecution must either produce, or demonstrate the unavailability of, the declarant whose statement it wishes to use against the defendant."

Craig, 497 U.S. at 865, 110 S. Ct. at 3174 (Scalia, J., dissenting) (alteration in original) (citations omitted) (quoting Idaho v. Wright, 497 U.S. 805, 815, 110 S. Ct. 3139, 3146, 111 L. Ed. 2d 638; Roberts, 448 U.S. at 65, 100 S. Ct. at 2538). As a result, it made sense to treat the testimony in Craig as in-court.[10]

---

[10] Of course, doing so invariably treats the witness as outside of the defendant's presence despite them both being "present" in court. However, the value of treating "presence" in a

In this case, however, the witnesses were unavailable and could not be compelled to testify at trial. As the majority's opinion makes abundantly clear, the two-way procedure served as a stand-in for a deposition – hearsay in its purest form. That the actual testimony was given during trial, in front of a jury, as opposed to, say, the day before the trial began, does not change the analysis. There was no way to bring the witnesses physically into court. The witnesses' testimony could only be obtained by deposition or two-way transmission. That Rule 15 provides for the defendant's presence at a deposition is similarly irrelevant. The issue before this court is whether presence is <u>constitutionally</u> required for either the deposition or its functional replacement, the two-way video transmission.

The constitutionality of admitting out-of-court, testimonial statements is governed by <u>Crawford v. Washington</u>, 541 U.S. 36, 124 S. Ct. 1354, 158 L. Ed. 2d 177. "Testimonial statements of witnesses absent from trial [are admissible] only where the declarant is unavailable, and only where the defendant has had a prior opportunity to cross-examine." <u>Id.</u> at 59, 124 S. Ct. at 1369. Physical presence is not mentioned, nor is it required.[11] In this case, the witnesses' statements were

---

consistent manner must be balanced against the value of treating functional equivalents in a consistent constitutional manner. In <u>Craig</u>, the transmission was a direct replacement for the in-court testimony of an available witness and it was appropriate to analyze the procedure accordingly.

[11] The <u>Crawford</u> Court specifically mentions that the analysis applies to "testimonial" statements, such as prior testimony before a grand jury (at which presence is not permitted) or at a former trial (which, if civil, provides no presence guarantee). 541 U.S. at 68, 124 S. Ct. at 1374.

unquestionably testimonial, and therefore the <u>Crawford</u> requirements would need to be satisfied. The defendant here was given a full opportunity to cross examine the unavailable witnesses. Constitutional issue settled. Accordingly, there can be no question that the procedure utilized here, a mechanism for obtaining the out-of-court testimony of an unavailable witness, passes constitutional muster.

### III.

For the foregoing reasons, I believe the live, two-way video transmission used in this case does not violate the defendant's Sixth Amendment right to confrontation. Accordingly, I would affirm the judgment of the district court.

---

It is also instructive that, despite Rule 15, depositions for which the defendant was not permitted to be present have not been found to violate either the Rule or the Confrontation Clause. <u>See, e.g.</u>, <u>United States v. Mueller</u>, 74 F.3d 1152, 1156 - 57 (11th Cir. 1996); <u>United States v. McKeeve</u>, 131 F.3d 1, 7 - 10 (1st Cir. 1997); <u>United States v. Kelly</u>, 892 F.2d 255, 260 - 63 (3d Cir. 1989); <u>United States v. Salim</u>, 855 F.2d 944, 948 - 55 (2d Cir. 1988).

MARCUS, Circuit Judge, dissenting, in which TJOFLAT and BIRCH, Circuit Judges, join:

I join in Judge Tjoflat's opinion and write separately to add a few thoughts of my own. As I see it, the use of the video testimony procedure employed in this case fully comported with the text, historical purpose, and modern understanding of the Confrontation Clause. The majority has essentially revised the Sixth Amendment on its own by erroneously employing a test that does not apply. Accordingly, I respectfully dissent.

The majority rests its opinion on Maryland v. Craig, 497 U.S. 836, 110 S. Ct. 3157, 111 L. Ed. 2d 666 (1990), a case that for at least three basic reasons is wholly inapplicable to the facts of this one. The first and most important distinction is that Craig involved witnesses who could have been ordered to testify in court in the usual fashion, but for compelling public policy reasons were permitted to testify out of the defendant's presence. In this case, by contrast, the witnesses (then in Australia) genuinely were unavailable to appear in court to give their testimony and could not be either persuaded or compelled to appear. Second, Craig was tailored to a very particular predicament: that of an abused child who, if forced to take the witness stand to confront her abuser, would suffer emotional trauma that would compound the harm she had already suffered and also impair her ability to give reliable testimony. Finally, the contemporaneous, real-time, two-

42

way video procedure used in this case was wholly different in nature from the one-way video procedure employed in <u>Craig</u>. A two-way videoconference used contemporaneously during trial, unlike a one-way videoconference, allows the witness to see the jury and the defendant, thus achieving the Confrontation Clause's important goal of bringing the accuser face to face with the accused <u>and</u> the factfinder, albeit through the medium of a television screen.

Moreover, even if <u>Craig</u> could be adapted to govern the facts of this case, a proper analysis under <u>Craig</u> would still not follow the path the majority has followed. In finding that the possibility of a Rule 15 deposition somehow made remote testimony improper under <u>Craig</u>, the majority has misapprehended both Rule 15 and the Confrontation Clause. Indeed, it has inexplicably accorded Rule 15 quasi-constitutional status as the exclusive means of obtaining overseas testimony. The <u>Craig</u> test, properly applied, would find that the two-way video procedure used here satisfied the Confrontation Clause in light of the necessity of obtaining the overseas witnesses' testimony and the extensive measures the district court took to preserve the essential elements of effective confrontation. All in all, the procedure the district court followed in this case fully complied with the demands of the Confrontation Clause. Yates and Pusztai had every opportunity to

cross-examine the witnesses against them, and those witnesses testified under oath[1] and under the gaze of the defendants, the judge and the jury.

I agree with the majority that the only question properly before us today is whether the use of a contemporaneous, two-way video procedure violated the defendants' rights under the Sixth Amendment Confrontation Clause. I also agree that we have no occasion to visit other questions such as whether the procedure complied with Rule 26 of the Federal Rules of Criminal Procedure.

## I.

The majority holds that the two-way video testimony procedure in this case violated the Confrontation Clause because it failed the test postulated in Maryland v. Craig, where the Supreme Court held that a trial court may dispense with face-to-face in-court confrontation when it finds that doing so is necessary to advance an important government interest and the reliability of the testimony is assured through other means. Id. at 850, 110 S. Ct. at 3166. This case falls outside the narrow scope of Craig.

First, any discussion of Maryland v. Craig must begin with the unique facts of the case. The defendant, the owner and operator of a kindergarten and

---

[1]The defendants have also argued that because the defendants were in Australia, they were not subject to a penalty for perjury under U.S. law. Because the majority does not address the issue, I assume for the purposes of my analysis that the witnesses' oaths carried the possibility of a penalty for perjury.

prekindergarten center, was charged with sexually abusing a six-year-old girl who had been in her care. The prosecution asked the trial court to invoke a state criminal procedure statute that authorized one-way video testimony by alleged victims of child abuse when "testimony by the child victim in the courtroom will result in the child suffering serious emotional distress such that the child cannot reasonably communicate." Craig, 497 U.S. at 841, 110 S. Ct. at 3161 (quoting Md. Cts. & Jud. Proc. Code. Ann. § 9-102(a)(1)(ii) (1989)). The court determined that testifying live would distress Craig's alleged victims in exactly that way, and it allowed the named victim and three more victims to testify against Craig through the one-way video procedure. Craig was convicted, and she sought a new trial, arguing that the federal Confrontation Clause guaranteed her a face-to-face courtroom encounter with her accusers.

The Supreme Court rejected Craig's argument, ruling that "[a]lthough face-to-face confrontation forms 'the core of the values furthered by the Confrontation Clause' . . . it is not the sine qua non of the confrontation right." Id. at 847, 110 S. Ct. at 3164 (quoting California v. Green, 399 U.S. 149, 157, 90 S. Ct. 1930, 1934–35, 26 L. Ed. 2d 489 (1970)). The Court held that "if the State makes an adequate showing of necessity, the state interest in protecting child witnesses from the trauma of testifying in a child abuse case is sufficiently important to justify the

45

use of a special procedure that permits a child witness in such cases to testify at trial against a defendant in the absence of face-to-face confrontation with the defendant." Id. at 855, 110 S. Ct. at 3169.

Craig is inapplicable to this case. The most important distinction is that the child witnesses in Craig were not unavailable; the court could have compelled them to testify in open court in the usual manner. Craig does not apply in a situation where the witnesses simply cannot be produced for an in-person appearance in court, as was the case with the two Australian witnesses in this case. Indeed, the Craig decision itself directly relied on a number of earlier precedents that permitted admission of statements by unavailable witnesses without requiring either face-to-face confrontation or any application of the test established in Craig. Id. at 847–50, 110 S. Ct. at 3164–66.  For example, in Mattox v. United States, 156 U.S. 237, 15 S. Ct. 337, 39 L. Ed. 409 (1895), the Court permitted the introduction of testimony two deceased witnesses had given at a prior trial. See id. at 244, 15 S. Ct. at 340. In Ohio v. Roberts, 448 U.S. 56, 100 S. Ct. 2531, 65 L. Ed. 2d 597 (1980), overruled in part on other grounds by Crawford v. Washington, 541 U.S. 36, 124 S. Ct. 1354, 158 L. Ed. 2d 177 (2004), the Court approved the admission of testimony an unavailable witness had given at a preliminary hearing. See id. at 73–74, 100 S. Ct. at 2542-43. In Bourjaily v. United States, 483 U.S. 171, 107 S.

Ct. 2775, 97 L. Ed. 2d 144 (1987), the Court permitted introduction of out-of-court statements of a co-conspirator who refused to testify at the defendant's trial, concluding that admissibility of such testimony was "firmly enough rooted in our jurisprudence" to permit admission despite the defendant's confrontation right. Id. at 183–84, 107 S. Ct. at 2782-83.

The Court took these and other cases to mean that "the word 'confronted,' as used in the Confrontation Clause, cannot simply mean face-to-face confrontation, for the Clause would then, contrary to our cases, prohibit the admission of any accusatory hearsay statement made by an absent declarant." Craig, 497 U.S. at 849, 110 S. Ct. at 3165. The Confrontation Clause must be interpreted in a manner "sensitive to its purposes and sensitive to the necessities of trial and the adversary process." Id.

The Supreme Court most recently expounded on the meaning of the Confrontation Clause in Crawford v. Washington, 541 U.S. 36, 124 S. Ct. 1354, 158 L. Ed. 2d 177 (2004). The defendant, Michael Crawford, was accused of assault and attempted murder. Crawford claimed he had acted in self-defense, but a statement his wife Sylvia had made to police appeared to contradict Crawford's story. The state marital privilege prevented the prosecution from compelling Sylvia Crawford to testify in court without her husband's consent, but the court permitted

the prosecution to introduce a recording of Sylvia Crawford's police interrogation. Crawford was convicted, but the Supreme Court reversed, finding that the introduction of Sylvia Crawford's statement violated the Sixth Amendment Confrontation Clause. After a lengthy discussion of the historical roots of the confrontation requirement as a device for preventing trial by ex parte examination, the Court held that prior testimonial statements against a criminal defendant can be admitted only if the witness is unavailable to appear in court and the defendant had a prior opportunity to cross-examine the witness. Id. at 68, 124 S. Ct. at 1374.

Crawford reinforced the longstanding principle that the Confrontation Clause in effect imposes two parallel sets of ground rules, one governing testimony by witnesses who are available to appear in court and one governing testimony by witnesses who are unavailable.[2] When a witness can be produced in court, she must testify in person in court, in the presence of the defendant and the factfinder, unless a sufficiently compelling public policy interest justifies dispensing with the face-to-face confrontation requirement under the Craig test. When a witness cannot

---

[2]The majority suggests that I have incorrectly applied Crawford to the facts of this case. Majority Op. at 12 n.4. I cite Crawford, however, precisely because it is one of many Supreme Court cases addressing the problem we face today: what to do about the testimony of a witness who is genuinely unavailable, whether because the witness stands on foreign soil and cannot be compelled to appear, or because the witness could not be compelled to testify because of a spousal privilege. Indeed, Crawford is the most recent of many Supreme Court cases standing for the general proposition that in-person confrontation is not required when a witness is unavailable, so long as the witness is subject to adequate cross-examination.

be brought to court, however, the Confrontation Clause is satisfied as long as the defendant has an adequate opportunity to cross-examine the witness. Cross-examination independently satisfies the confrontation requirement; the testimony of unavailable witnesses can be introduced against a defendant without any application of the <u>Craig</u> test. <u>See</u> <u>Crawford</u>, 541 U.S. at 53-54, 68, 124 S. Ct. at 1365–66, 1374 (noting that unavailability and cross-examination are the key factors, without any mention of <u>Craig</u>).[3]

In <u>Crawford</u> the Supreme Court emphasized that the proper interpretation and application of the Confrontation Clause is impossible without consideration of the purposes it was intended to serve and how the confrontation requirement has historically worked in practice. <u>See</u> <u>Crawford</u>, 541 U.S. at 42-43, 124 S. Ct. at 1359 ("The Constitution's text does not alone resolve this case. . . . We must . . . turn to the historical background of the Clause to understand its meaning."). The testimony of unavailable witnesses falls within a traditional exception to the usual

---

[3]Indeed, one way to state the holding of <u>Crawford</u> is that there is no analogue to <u>Craig</u> in the context of prior sworn testimony. <u>Craig</u> declares that when the witness is available and thus should be brought to testify in the defendant's presence, the requirement of in-person confrontation can be dispensed with only on a showing of necessity and reliability. <u>Crawford</u> holds that in the case of prior testimonial statements, such a showing of necessity and reliability cannot substitute for the mode of confrontation the Constitution demands, which is cross-examination. <u>See</u> <u>Crawford</u>, 541 U.S. at 60-69, 124 S. Ct. at 1369–74 (overruling <u>Ohio v. Roberts</u>, 448 U.S. 56, 100 S. Ct. 2531, 65 L. Ed. 2d 597 (1980), insofar as that case permitted admission of prior testimonial statements based on "indicia of reliability" other than cross-examination, because cross-examination is the <u>only</u> indicium of reliability the Confrontation Clause deems acceptable).

49

requirement of in-person confrontation. See id. at 54, 124 S. Ct. at 1365–66 (stating that the confrontation requirement is subject only to "those exceptions established at the time of the founding," but that chief among those exceptions is the exception for persons "unavailable to testify"); see also Mattox, 156 U.S. at 243, 15 S. Ct. at 340 ("Many of [the Constitution's] provisions in the nature of a bill of rights are subject to exceptions, recognized long before the adoption of the constitution, and not interfering at all with its spirit. Such exceptions were obviously intended to be respected.").

Why the Confrontation Clause applies a special rule to unavailable witnesses may be puzzling on the surface, but the rationale becomes clear once we follow the Supreme Court's exhortation to examine the historical roots of the Clause. Common law adversarial procedure demands that courts perform the ritual of face-to-face confrontation not just for the sake of spectacle, but because it provides a convenient precautionary measure for ensuring that the defendant has a full opportunity to challenge a witness's statements. See Crawford, 541 U.S. at 61, 124 S. Ct. at 1370 ("The Clause's ultimate goal is to ensure reliability of evidence. . . . [I]t is a procedural rather than a substantive guarantee. It commands . . . that reliability be assessed in a particular manner: by testing in the crucible of cross-examination."). When it is possible to produce a witness for trial, the requirement

of physical presence works adequately, if imperfectly, as a means of insulating the adversarial process from contamination by inquisitorial practices. If it were applied in situations where the witness cannot be produced at trial, however, this rigid procedural device would perform far more poorly. Because the in-person confrontation rule assumes that the witness is available, rigid application of the rule would result in exclusion of all statements of unavailable witnesses, which would lead courts to discard too much reliable evidence. Long ago, the Court held in Mattox, for example, that prior sworn testimony by deceased witnesses should be held admissible even though the witnesses would not appear at trial. The Court wrote:

> [G]eneral rules of law of this kind, however beneficent in their operation and valuable to the accused, must occasionally give way to considerations of public policy and the necessities of the case. . . . The law in its wisdom declares that the rights of the public shall not be wholly sacrificed in order that an incidental benefit may be preserved to the accused.

Mattox, 156 U.S. at 243, 15 S. Ct. at 340.

The sole purpose of the Craig test is to determine when a court can relax the rigid requirement of face-to-face confrontation. But when a witness is truly unavailable, the requirement of face-to-face confrontation does not apply in the first place, so the Craig test ought not to apply either.

In the second place, as Judge Tjoflat suggests, <u>Craig</u> was tailored as a narrow solution to an exceptional problem. I suspect that the Supreme Court never intended lower courts to apply <u>Craig</u> outside the peculiar and poignant facts of that case: the case of a terrorized child for whom a forced encounter with her abuser in open court would compound the trauma she had suffered from the very events she was to relate. The <u>Craig</u> opinion is replete with references to the unique context of the case. The Court's final summary of its holding spoke in the narrowest of terms:

> In sum, we conclude that where necessary to protect a child witness from trauma that would be caused by testifying in the physical presence of the defendant, at least where such trauma would impair the child's ability to communicate, the Confrontation Clause does not prohibit use of a procedure that, despite the absence of face-to-face confrontation, ensures the reliability of the evidence by subjecting it to rigorous adversarial testing and thereby preserves the essence of effective confrontation.

<u>Craig</u>, 497 U.S. at 857, 100 S. Ct. at 3170.

It is clear that <u>Craig</u>'s relevance ebbs as the circumstances of a case -- the technique at issue, the identity of the witness, and the nature of the testimony -- move farther away from the situation at <u>Craig</u>'s heart -- one-way video testimony by an abused child against her alleged abuser. The witnesses in this case were not children or other especially vulnerable persons; nor was the prosecution seeking to avoid producing the witnesses in the courtroom because of the possibility that the

witnesses might be impaired by emotional distress, the danger of intimidation, or any other factor that even remotely mirrors the Craig situation.

The third powerful difference from Craig is that the use of a live, contemporaneous, two-way video transmission in this case is fundamentally different from the one-way video transmission in Craig. In Craig, the judge, jury, and defendant remained in the courtroom and watched each child witness on a video screen as he or she testified from a remote location. The child, on the other hand, had no view of the persons in the courtroom -- indeed, the very purpose of the video setup was to prevent the child from seeing the defendant while he or she testified.

The video link in this case decidedly had the opposite purpose: to allow a confrontation between the defendants and their accusers, not to prevent one. The witnesses had a full view of the defendants and the jury as they testified.[4] That visual connection was enough to achieve "the strong symbolic purpose served by requiring adverse witnesses at trial to testify in the accused's presence." Craig, 497 U.S. at 847, 110 S. Ct. at 3164. Quite simply, the factual elements of this case -- two-way video testimony by an overseas witness testifying to his business dealings

---

[4]The trial transcript does not describe the exact details of the videoconferencing setup, but the district court's order conditioned its approval of the video testimony procedure "upon the video teleconference equipment being positioned so that the witness is able to see the attorneys, defendant, and jury and that those parties are also able to see the testifying witness."

53

with the defendants, or the defendants' use of his signature on drug prescriptions -- are so far removed from the original scope of Craig as to render Craig inapplicable.

## II.

The majority's errors did not end with its decision to use the Craig test; the majority also applied the test incorrectly. In my view, a proper application of the Craig test would, in any event, have determined that the use of the two-way video procedure in this case satisfied the Confrontation Clause.

Even if the Craig test could be adapted to apply to the testimony of witnesses who are beyond the court's subpoena power, it is clear that the unavailability of a witness would have to be a factor in the court's evaluation of whether a procedure satisfied Craig's requirement that the procedure be necessary to serve an important government interest. The Craig test's baseline scenario takes for granted that the child witness will give her testimony in some fashion; that is, the Craig necessity test leaves to one side an option that would simultaneously protect the child from the trauma of testifying and honor the defendant's confrontation rights: simply not asking the child to testify. In the case of an unavailable witness, securing the testimony is impossible without denying the defendant a courtroom confrontation with the witness. Thus, properly translating the Craig test to a situation involving an unavailable witness would require

54

counting the value of obtaining the witness's testimony as an important public interest weighing in favor of permitting testimony through alternative means. Important testimony from a genuinely unavailable witness would almost always satisfy the Craig necessity test, so the analysis would turn on whether the method for securing the witness's testimony would satisfy the second part of the Craig test, whether the alternative procedures do enough to ensure the reliability of the testimony.

The majority's principal argument in its Craig analysis is that the two-way video procedure was not "necessary" within the meaning of Craig precisely because the district court could have ordered a Rule 15 deposition in which the defendant and the prosecution witnesses would have met face to face. I believe this line of thinking rests on a thorough misunderstanding of both the Confrontation Clause and the Rule 15 procedure.

To hear the majority tell it, the Confrontation Clause imposes a single one-size-fits-all requirement: a defendant must be afforded a face-to-face confrontation with the witnesses against him, and any face-to-face meeting between the defendant and the prosecution witnesses is sufficient, whether the meeting takes place in open court or in another forum such as a Rule 15 deposition.

The majority's conception of the rule is both more permissive and more restrictive than the rules the Supreme Court has actually held to apply. As I have suggested, the required confrontation procedure differs depending on whether the witness is available to appear at trial: When a witness is available to appear in court, a mere face-to-face meeting between the defendant and the witness is not enough; instead, the witness must come to court and testify in the presence of the defendant and the factfinder. When a witness is unavailable to appear in court, a face-to-face meeting is not required at all.

When a witness is available for an in-person court appearance, the ideal is a face-to-face confrontation in open court: the Confrontation Clause not only demands that the defendant be present as the witness testifies; it also demands that the trier of fact be present. See, e.g., Coy v. Iowa, 487 U.S. 1012, 1021, 108 S. Ct. 2798, 2803, 101 L. Ed. 2d 857 (1988) (describing "the irreducible literal meaning of the Clause" as "'a right to meet face to face all those who appear and give evidence at trial'" (quoting California v. Green, 399 U.S. 149, 175, 90 S. Ct. 1930, 1943-44, 26 L. Ed. 2d 489 (1970) (Harlan, J., concurring))); Green, 399 U.S. at 158, 90 S. Ct. at 1935 (describing the three values at the heart of the in-court confrontation requirement, the third being that it "permits the jury . . . to observe the demeanor of the witness in making his statement, thus aiding the jury in

assessing his credibility"); Barber v. Page, 390 U.S. 719, 725, 88 S. Ct. 1318, 1322, 20 L. Ed. 2d 255 (1968) ("The right to confrontation . . . includes both the opportunity to cross-examine and the occasion for the jury to weigh the demeanor of the witness."); Mattox, 156 U.S. at 242–43, 15 S. Ct. at 339 (confrontation is designed to give the defendant the opportunity of "compelling [the witness] to stand face to face with the jury in order that they may look at him, and judge by his demeanor upon the stand and the manner in which he gives his testimony whether he is worthy of belief"). However, if a face-to-face meeting is simply impossible because the witness is truly unavailable, the Confrontation Clause imposes a less stringent confrontation requirement: no face-to-face meeting is required, but the witness's statements will be admissible only if the defendant had a robust opportunity to cross-examine the witness. Cf. Crawford, 541 U.S. at 68, 124 S. Ct. at 1374 (prior testimonial statements can be admitted against a defendant only if the witness is unavailable and the defendant had a prior opportunity to cross-examine the witness).

When a court employs a Rule 15 deposition, the deposition does not function as a means of achieving the preferred ideal of full face-to-face confrontation. A Rule 15 deposition falls far short of that ideal, because the trier of fact is not present at the deposition. Instead, the Rule 15 deposition functions as a

fallback procedure for obtaining testimony when a witness is unavailable. See United States v. Drogoul, 1 F.3d 1546, 1557 (11th Cir. 1993) ("[T]he only proper use of a deposition in a criminal case is as substitute testimony when a material witness is unavailable for trial." (emphasis added)). So a Rule 15 deposition falls squarely within the second category of procedures that need not involve face-to-face confrontation but are permissible only when the witness is unavailable.

The majority is correct that a defendant is entitled to be present at a Rule 15 deposition, but that requirement does not apply because Rule 15 has a special connection to the Confrontation Clause. Rather, the requirement simply comes from the terms of Rule 15 itself. Fed. R. Crim. P. 15(c).[5] Indeed, in United States v.

---

[5]The relevant portion of the rule reads:

(c)    Defendant's Presence.
   (1)    Defendant in Custody. The officer who has custody of the defendant must produce the defendant at the deposition and keep the defendant in the witness's presence during the examination, unless the defendant:

   (A)    waives in writing the right to be present; or

   (B)    persists in disruptive conduct justifying exclusion after being warned by the court that disruptive conduct will result in the defendant's exclusion.

   (2)    Defendant Not in Custody. A defendant who is not in custody has the right upon request to be present at the deposition, subject to any conditions imposed by the court. If the government tenders the defendant's expenses as provided in Rule 15(d) but the defendant still fails to appear, the defendant--absent good cause--waives both the right to appear and any objection to the taking and use of the deposition based on that right.

Fed. R. Crim. P. 15(c).

Siddiqui, 235 F.3d 1318 (11th Cir. 2000), a defendant argued before a panel of this Court that the Confrontation Clause barred a trial court from admitting testimony from two Rule 15 depositions that the defendant had monitored only by telephone. Id. at 1323–24. The panel squarely rejected the challenge, finding that even though the defendant had not been physically present at the depositions, he had been fully able to cross-examine the witnesses remotely. Id. This Court reached the same result in a similar case, United States v. Mueller, 74 F.3d 1152, 1156–57 (11th Cir. 1996).

The majority does not deny that cases like Siddiqui and Mueller contradict its characterization of the relationship between Rule 15 and the Confrontation Clause. The majority simply dismisses such cases as "rare" and "exceptional." It does not, however, even hint at identifying any distinguishing features that set those cases apart from this one. Nor does it explain why the unusual combination of circumstances in this case -- the witnesses' location in Australia, their refusal to appear in the United States, and their willingness to testify live and under oath by videoconference -- cannot similarly be called "rare" and "exceptional."

It is clear, then, that for the purposes of Confrontation Clause analysis, depositions under Rule 15 are in no way superior to two-way videoconference

testimony, or indeed, any other means of obtaining and preserving testimony that affords the defendant an adequate opportunity to cross-examine the witness. The majority's assertion that a Rule 15 deposition has some special constitutional status is simply wrong.

If anything, a two-way videoconference during trial allows more effective cross-examination than a Rule 15 deposition does. The videoconference procedure lets the factfinder observe subtleties of tone, timing, body language, and overall demeanor as the lawyer asks questions, as the witness reacts on hearing the questions, and as the witness formulates and delivers answers to the questions. Indeed, the jury's view may well be better than what it could have had in the courtroom. Moreover, when a witness testifies in a live videoconference, the judge can rule on objections immediately and otherwise manage the course of questioning and the conduct of counsel. Because the videoconference takes place at the time of trial, the defendant and defense counsel know how the prosecution's case has developed so far and can tailor their cross-examination accordingly. In any event, the jury will certainly be able to glean more from a television screen contemporaneously recording the examination than it can from deposition testimony dryly read from a transcript.

The majority suggests that regardless of the advantages of videoconferencing, the defendants appear to have preferred that these two witnesses testify by Rule 15 deposition. But the defendants did not request Rule 15 depositions; they only mentioned Rule 15 by way of opposing the government's motion to permit video testimony. Indeed, the defendants might well have opposed motions by the government to allow Rule 15 depositions or admit the depositions into evidence. The Confrontation Clause is not concerned with the full range of tactical advantages that the use of one procedure or another might confer on the defense; it is concerned only with the defendant's ability to challenge the prosecution witness's testimony. Moreover, even if the defendants did in fact prefer a Rule 15 deposition specifically because it would provide advantages in cross-examination, the Confrontation Clause still would not demand that the court accede to the defendants' preference. The Confrontation Clause guarantees defendants a fair cross-examination, not an ideal cross-examination. See Kentucky v. Stincer, 482 U.S. 730, 739, 107 S. Ct. 2658, 2664, 96 L. Ed. 2d 631 (1987) ("[T]he Confrontation Clause guarantees only 'an opportunity for effective cross-examination, not cross-examination that is effective in whatever way, and to whatever extent, the defense might wish.'" (quoting Delaware v. Fensterer, 474 U.S. 15, 20, 106 S. Ct. 292, 294, 88 L. Ed. 2d 15 (1985) (per curiam))). Because

61

the video testimony procedure provided the cross-examination that the Confrontation Clause requires, the fact that the defendants might have preferred a Rule 15 deposition is simply irrelevant.

The second requirement Craig established for dispensing with in-court confrontation is that the procedures used must carry adequate assurances of reliability. The two-way video procedure used in this case clearly met this important requirement. Though it did not bring the witnesses into the same room as the defendant and the jury, the procedure provided all the other elements that are the hallmarks of traditional in-court confrontation: the witnesses were under oath; the witnesses and the defendants could see the jury; the defendants and the jury could see the witnesses; and the defendants had a full opportunity to dispute the witnesses' testimony through "cross-examination, the 'greatest legal engine ever invented for the discovery of truth.'" California v. Green, 399 U.S. 149, 158, 90 S. Ct. 1930, 1935, 26 L. Ed. 2d 489 (1970) (quoting 5 J. Wigmore, Evidence § 1367).

The Court in Craig found that one-way video transmission included enough of the "elements of confrontation—oath, cross-examination, and observation of the witness' demeanor—" to make the testimony "reliable and subject to rigorous adversarial testing in a manner functionally equivalent to that accorded live, in-

person testimony." Craig, 497 U.S. at 851, 110 S. Ct. at 3166. Surely, the two-way video transmission in this case must have been enough to satisfy the Craig test, since it provided everything the one-way video procedure provided and additionally allowed the witnesses a view of the remote courtroom. Again, in this case the witnesses testified under oath; the defendant, the judge, and the jury could see the witnesses as they gave their testimony; and the witnesses could see the attorneys, the defendant, and the jury. Moreover, there is no evidence to suggest that defects in the video transmission impaired effective cross-examination of the witnesses. The record suggests that whatever defects there were in the transmission were promptly addressed. The defendants could have brought the remaining defects, if there were any, to the court's attention so that the court could remedy the situation at that time. Every core element of confrontation was present to the maximum extent possible under the circumstances.

In short, the only device the Confrontation Clause requires a court to avail itself of is the physical production of the witness in the courtroom. But, if it is simply not possible to physically bring the witness to the courtroom, the court then may resort to substitute methods. The Confrontation Clause expresses no preference between substitute methods that place the defendant in the physical presence of the witness, such as Rule 15 depositions, and methods where the

defendant is not physically present, such as two-way video testimony. The basic limitation the Confrontation Clause imposes on all of these methods, however, is that the defendant must have a meaningful opportunity to cross-examine the witness under oath before the testimony can be admitted.

Finally, in determining whether a witness is unavailable for purposes of the Confrontation Clause, "[t]he ultimate question is whether the witness is unavailable despite good-faith efforts undertaken prior to trial to locate and present that witness." Ohio v. Roberts, 448 U.S. 56, 74, 100 S. Ct. 2531, 2543, 65 L. Ed. 2d 597 (1980), overruled in part on other grounds by Crawford v. Washington, 541 U.S. 36, 124 S. Ct. 1354, 158 L. Ed. 2d 177 (2004); see also United States v. Siddiqui, 235 F.3d 1318, 1324 (11th Cir. 2000). The district court properly determined that the witnesses were beyond the subpoena power of the United States and were genuinely unwilling to appear at trial despite the government's efforts. Cf. Siddiqui, 235 F.3d at 1324 (upholding a district court's findings that two witnesses outside the United States were unavailable for Confrontation Clause purposes). The witnesses were genuinely unavailable, so their testimony fell outside the ambit of Maryland v. Craig.

Most respectfully, I believe that my colleagues have lost sight of what the Sixth Amendment Confrontation Clause was designed to do: prevent the

government from obtaining summary convictions based on ex parte examinations that the defendant had no opportunity to oppose through the critical engine of cross-examination. The majority's holding has reduced the Clause's protections to an abstract and sterile rule that states that unless the defendant and the witness can be brought together in the same room, the witness's testimony must be excluded, no matter what steps the court takes to ensure fair and effective cross-examination.

The majority's holding today disserves the Constitution and slights the paramount public interest of admitting competent and reliable testimony into evidence in criminal trials. I dissent.